CPC INTERNATIONAL, INC., Plaintiff,

v.

AEROJET–GENERAL CORPORATION, Cordova Chemical Company, Cordova Chemical Company of Michigan, and Michigan Department of Natural Resources, Defendants.

No. G89–10503 CA.

United States District Court, W.D. Michigan, S.D.

Dec. 18, 1989.

Miller Johnson Snell & Cummiskey by Gordon J. Quist, J. Michael Smith, Grand Rapids, Mich., and Mott & Associates, P.C. by Randy M. Mott, Raissa Kirk, Washington, D.C. (William S. Wells, CPC Intern. Inc., Englewood Cliffs, N.J., of counsel), for plaintiff.

Warner Norcross & Judd by John D. Tully, Grand Rapids, Mich., for Aerojet–General Co., Cordova Chemical Co., and Cordova Chemical Co. of Michigan.

Frank J. Kelley, Atty. Gen. by Stewart H. Freeman, Kathleen L. Cavanaugh, Asst. Attys Gen., Environmental Protection Div., Lansing, Mich., for Michigan Dept. of Natural Resources.

## OPINION

HILLMAN, Chief Judge.

## I. BACKGROUND

This is an action brought under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.* Plaintiff, CPC International ("CPC"), seeks to recover its response costs incurred in connection with a hazardous waste site in Dalton Township, Muskegon County, Michigan (the "Site"). Plaintiff claims that defendants Michigan Department of Natural Resources ("MDNR"), Aerojet–General Corporation ("Aerojet"), Cordova Chemical Company ("Cordova/California"), and Cordova Chemical Company of Michigan ("Cordova/Michigan") are responsible under CERCLA for these costs. CPC further asks for a declaratory judgment that defendants shall be responsible for any future response costs at the Site, and for any liability CPC should incur as a result of its activities at the Site.

Aerojet and the Cordova defendants have filed a counterclaim against CPC and a cross-claim against MDNR claiming that they are entitled to recover their response costs related to the Site. Both the cross-claim and the counterclaim request declaratory judgment granting reimbursement for any future response costs incurred in connection with the Site.

Presently before the court is a motion by MDNR to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). No motions are pending on either the counterclaim or the cross-claim.

## II. STANDARD

The court must liberally construe the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff for the purposes of a motion to dismiss under Fed. R.Civ.P. 12(b)(6). *Kent v. Johnson,* 821 F.2d 1220, 1223 (6th Cir.1987); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). The court need not determine whether a plaintiff will ultimately prevail, but should limit its consideration to whether the claimant is entitled to offer evidence to support the claims. *Scheur v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint is sufficient if it sets forth enough information to outline the elements of the claim, or permits inferences to be drawn that these elements exist. *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *German v. Killeen,* 495 F.Supp. 822, 827 (E.D.Mich. 1980).

Although factual allegations in the complaint are presumed true, the court need not accept conclusory allegations of law. *Vermilion Foam Products Co. v. General Electric Co.,* 386 F.Supp. 255 (E.D.Mich.1974). However, a party is entitled to pursue his claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Thus, if plaintiff's complaint sets forth sufficient allegations

to establish a claim for relief, the motion to dismiss must be denied.

### III.  FACTS

CPC alleges in its complaint that the Site has been contaminated since 1959 when it was the site for Ott Chemical Company. Complaint, ¶ 13. In 1965 a subsidiary of CPC, Four Lakes Chemical Company, purchased the property and continued production at the Site under the Ott name ("Ott–II"). During the time that Ott–II was operating at the Site, 1965–1972, it undertook various measures to reduce pollution and improve waste disposal, including operating groundwater purge wells. Paragraphs 14–16.

CPC sold the Site to Story Chemical Company ("Story") in 1972. Story repeatedly violated discharge standards set by the State of Michigan, causing numerous spills of hazardous substances between 1972 and 1977. Paragraphs 17–19. MDNR allowed Story to discontinue the groundwater purging in 1974, which caused substantial spread of effluent and contamination of nearby residential wells. MDNR did not require the resumption of the purge wells until 1977. Paragraph 20.

Story was judged bankrupt in 1977. Cordova/California purchased Story's assets, including the Site. Paragraphs 23–24. Aware of the contamination on the Site, MDNR requested each prospective buyer, including Cordova/California, to resume operation of the groundwater purge wells. Paragraphs 23–24. However, Cordova/California and MDNR instead entered into an agreement whereby Cordova/California would pay MDNR $600,000 and properly dispose of phosgene on the Site. MDNR, in return, would not hold Cordova/California responsible for any remedial actions deemed necessary as a result of the prior contamination. Further, under the agreement MDNR assumed the responsibility of operating the purge wells. Paragraph 28.

MDNR requested, and received funds from the Michigan State Legislature specifically to operate the purge wells and to provide an alternate water supply for local residents. MDNR never operated the wells nor did it spend the majority of the appropriated funds for the alternative water supply until it was required to do so under a stipulation of settlement entered by the court in *Gollach v. CPC International Inc.*, No. G77–232 (W.D.Mich.1981). Paragraph 29.

MDNR's failure to operate the purge wells resulted in a drastic increase in the contamination of local groundwater. Paragraph 31. MDNR knew of the welling contamination yet nonetheless failed to fulfill its responsibility and operate the purge wells. It further recommended in 1985 that the United States Environmental Protection Agency not pursue corrective action under the Resource Conservation and Recovery Act ("RCRA") but instead indicated that groundwater remediation through CERCLA was sufficient. Paragraph 40.

CPC concludes that MDNR is liable as an "operator" of the Site under CERCLA. CPC also asserts that the agreement with Cordova/California additionally subjects MDNR to liability under CERCLA. CPC calculates that it incurred approximately $4,537,537.00 in response costs in connection with cleanup operations conducted at the Site.

### IV.  DISCUSSION

The elements of a prima facie case under CERCLA are:

(1) the Site is a "facility;"

(2) a "release" or "threatened release" occurred at the Site;

(3) the release caused plaintiff to incur response costs; and

(4) defendants are responsible persons under CERCLA, 42 U.S.C. § 9607(a).

*United States v. Aceto Agr. Chemicals Corp.*, 872 F.2d 1373 (8th Cir.1989); *United States v. Bliss*, 667 F.Supp. 1298 (E.D.Mo. 1987). MDNR only disputes the fourth element, insisting that it is not included in any of the four categories circumscribed by Congress. CERCLA defines the class of potential defendants as:

(1) the owner and operator of a vessel or a facility;

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of;

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance ...

42 U.S.C. § 9607(a)

Plaintiff argues that MDNR's activities at the Site qualify it as an "operator" under CERCLA, and therefore liable under either section 107(a)(1) or 107(a)(2). 42 U.S.C. § 9607(a)(1)–(2). Additionally, plaintiff alleges that the agreement with Cordova/California involving the disposal of phosgene and operation of purge wells subjects MDNR to liability under section 107(a)(3). 42 U.S.C. § 9607(a)(3). I will address each of these claims separately.

A. *Liability under CERCLA section 107(a)(1):*

■ MDNR is clearly not a responsible party under section 107(a)(1). This section applies only to current owners and operators. *Tanglewood East Homeowners v. Charles–Thomas, Inc.,* 849 F.2d 1568 (5th Cir.1988); *State of New York v. Shore Realty Corp.,* 759 F.2d 1032 (2d Cir.1985). Plaintiff fails to allege that MDNR is presently an owner or operator of the Site, nor is this a justifiable inference from the facts alleged. The complaint therefore fails to state a claim against MDNR under this section.

B. *Liability under CERCLA section 107(a)(2):*

Plaintiff contends that MDNR is also responsible under section 107(a)(2). 42 U.S.C. § 9607(a)(2). Prior owners and operators are liable under this section if, during the time they owned or operated the facility, there was a disposal of toxic substances. MDNR contests this claim on two grounds. First MDNR argues that it is not an "owner and operator" within the meaning of the statute. Second, MDNR submits that even if its activities at the Site were sufficient to qualify it as an operator, no disposal of hazardous substances occurred during their period of operation. Lacking this requirement, MDNR concludes that it is not a proper defendant under section 107(a)(2). For the reasons presented below, I am not persuaded by either of these arguments.

1. Owner/Operator:

■ The first requirement for liability under section 107(a)(2) is that the defendant be an owner or operator of the site. The definition section of CERCLA provides:

(20)(A) The term "owner or operator" means ... (ii) in the case of an onshore facility or an offshore facility, any person owning or operating such facility, and (iii) in the case of any facility, title or control of which was conveyed due to bankruptcy, foreclosure, tax delinquency, abandonment, or similar means to a unit of State or local government, any person who owned, operated or otherwise controlled activities at such facility immediately beforehand.

\* \* \* \* \* \*

(D) The term "owner or operator" does not include a unit of State or local government which acquired ownership or control involuntarily through bankruptcy, tax delinquency, abandonment, or other circumstances in which the government involuntarily acquires title by virtue of its function as sovereign. The exclusion provided under this paragraph shall not apply to any State or local government which has caused or contrib-

uted to the release or threatened release of a hazardous substance from the facility, and such a State or local government shall be subject to the provisions of this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title.

42 U.S.C. § 9601(20)(D)

Many courts have grappled with the application of this definition of "owner-operator" in a wide variety of circumstances. Most often courts have adopted a liberal interpretation, believing this to be consistent with the statutory intent of CERCLA. *United States v. South Carolina Recycling and Disposal Inc.,* 653 F.Supp. 984 (D.S.C.1984) (finding a sublessor of a facility liable as an owner-operator); *Shore Realty Corp., supra* (holding a stockholder who manages the corporation personally liable as an "operator"); *State of Idaho v. Bunker Hill Co.,* 635 F.Supp. 665 (D.Idaho 1986) (concluding that a parent corporation is an owner-operator under section 107(a)(2)).

█ The most commonly adopted yardstick for determining whether a party is an owner-operator under CERCLA is the degree of control that party is able to exert over the activity causing the pollution. Other district courts have reached this conclusion by borrowing the definition of "owner-operator" as used in the Federal Water Pollution Control Act, 33 U.S.C. § 1321(a)(6). *Bunker Hill, supra; United States v. Northeastern Pharm. & Chem. Co.,* 579 F.Supp. 823 (W.D.Mo.1984) (rev'd in part on other grounds, 810 F.2d 726 (8th Cir.1986)). That definition is:

> The owner-operator of a vessel or a vacility [sic] has the capacity to make timely discovery of oil discharges. The owner-operator has power to direct the activities of persons who control the mechanisms causing the pollution. The owner-operator has the capacity to prevent and abate damage.

*United States v. Mobil Oil Corp.,* 464 F.2d 1124, 1127 (5th Cir.1972); adopted in *Apex Oil Co. v. United States,* 530 F.2d 1291, 1293 (8th Cir.1976).

I find this a highly analogous context and agree that it may appropriately be used to determine when a state's DNR may be held liable under section 107(a)(2).

MDNR correctly notes that mere regulatory activities will not subject a state agency to liability as an owner-operator. The court in *United States v. Dart Industries, Inc.,* 847 F.2d 144, 146 (4th Cir.1988) refused to classify the South Carolina Department of Health and Environmental Control as an owner-operator under CERCLA.

> [T]here is no allegation that DHEC went beyond this governmental supervision and directly managed Carolawn's employees of finances at the Fort Lawn site ... The generators are unable to specify any "hands on" activities by DHEC that contributed to the release of hazardous wastes. The district court appropriately described DHEC's activities as merely "a series of regulatory actions."

Here no allegations are made that MDNR actually managed or had control over Cordova/California. However, CPC has alleged that MDNR undertook "hands on" activities that resulted in contamination of the groundwater in the area. Under the agreement with Cordova/California, MDNR purportedly assented to actually remove and dispose of waste and to operate purge wells on the Site. I find this activity substantially different from DHEC issuing permits, setting compliance standards, and promising to install monitoring wells in *Dart.* Such regulatory activity will ordinarily not designate one as an owner-operator, but where a party assumes control of an activity and then fails to perform, that party should bear the responsibility for any pollution which results.

MDNR denies that it agreed to operate purge wells at the site. While this may indeed be true, resolution of this factual discrepancy is not before the court on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Plaintiff has alleged that MDNR assumed this obli-

gation. This is sufficient to survive a Rule 12(b)(6) motion.

## 2. Disposal:

An operator of a site is nonetheless not liable under CERCLA section 107(a)(2) unless, during the time of defendant's tenure as owner-operator, a disposal of hazardous substances at the site occurred. Plaintiff alleges that a massive increase in the contamination of Little Bear Creek between 1977 and 1984 was due to MDNR's failure to operate purge wells. Complaint, ¶ 31. Plaintiff then concludes that MDNR's involvement at the Site "caused or contributed to the spread or migration of hazardous substances" and that this constitutes a "disposal" and "release" under the statute. Complaint, ¶ 50–51. I agree.

MDNR does not offer any support for its assertion that there was no disposal at the Site during its period of operation. CERCLA defines "disposal" as including "the discharge, deposit, injection, dumping, spilling, leaking, or placing" of any toxic substance such that it "may enter the environment." 42 U.S.C. § 6903(3); 42 U.S.C. § 9601(29). Ample case law supports a broad interpretation of the term "disposal". *United States v. Waste Industries*, 734 F.2d 159 (4th Cir.1984); *Emhart Industries v. Duracell Int'l, Inc.*, 665 F.Supp. 549, 574 (M.D.Tenn.1987); *United States v. Conservation Chemical*, 619 F.Supp. 162, 240 (D.C.Mo.1985); *United States v. Price*, 523 F.Supp. 1055 (D.N.J.1981), *aff'd* 688 F.2d 204 (3rd Cir.1982). I am satisfied that the complaint adequately alleges that substantial pollutants "spilled" or "leaked" into the environment during the period that MDNR was an operator of the Site.

I find that the complaint adequately alleges facts which, if proven, make MDNR a responsible party under section 107(a)(2). On this determination alone I could deny MDNR's motion to dismiss. However, since I find even more conclusively that MDNR falls within the category described in section 107(a)(3), I will address this subsection as well.

## C. *Liability under CERCLA section 107(a)(3):*

Plaintiff avers that MDNR arranged "for treatment or disposal of hazardous substances at the Site" and therefore is a responsible party under section 107(a)(3). MDNR first asserts that only one who owns or possesses the substances can be held liable. Second, MDNR argues that plaintiff failed to allege that MDNR "arranged to dispose" of wastes at the Site. I find these arguments without merit.

### 1. "Own or Possess" Hazardous Substances:

MDNR cites several district court decisions which expressly hold that one must own or possess the waste in order to incur liability under this subsection. *State of New York v. City of Johnstown, N.Y.*, 701 F.Supp. 33 (N.D.N.Y.1988); *C. Greene Equipment Corp. v. Electron Corp.*, 697 F.Supp. 983, 986 (N.D.Ill.1988); *United States v. Ward*, 618 F.Supp. 884, 893 (E.D. N.C.1985).

Plaintiff responds that legal title or actual possession is not necessary where a party had control over the handling of the substance. Plaintiff accurately cites the court to cases where the courts have not required that a defendant actually own or possess the waste if that defendant was responsible for making the decision of how to dispose of the substance. *United States v. Northeastern Pharmaceutical*, ("NEPACCO") 810 F.2d 726 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); *United States v. Bliss, supra; Conservation Chemical Co., supra; United States v. Mottolo*, 629 F.Supp. 56, 60 (D.N.H.1984).

The key to reconciling these two lines of cases rests with the relationship between the defendant and the actual owner of the wastes, and the level of decision-making authority the defendant possessed. The cases finding a defendant liable who does not own or possess the substances at issue, noticeably involve a party who is an officer or a manager of the corporation which is generating the waste. *United States v.*

*Ward,* 618 F.Supp. 884 (E.D.N.C.1985); *Mottolo, supra.* However, the reasoning behind imposing personal liability in these instances applies equally in this case. Addressing this issue, the Eighth Circuit stated:

It is the authority to control the handling and disposal of hazardous substances that is critical under the statutory scheme. The district court found that [defendant] actually knew about, had immediate supervision over, and was directly responsible for arranging for the transportation and disposal of the NEPACCO plant's hazardous substances at the ... site. We believe requiring proof of personal ownership or actual physical possession of hazardous substances as a precondition for liability under CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3), would be inconsistent with the broad remedial purposes of CERCLA.

*NEPACCO,* 810 F.2d at 743.

The court in *Johnstown, supra,* in analyzing the question of a state's liability concluded that "there has to be some nexus between the allegedly responsible person and the owner of the hazardous substances before a party can be held liable under 42 U.S.C. § 9607(a)(3)." 701 F.Supp. at 36. In that case, since the state engaged only in remedial activities, the court found that it was not an included party under section 107(a)(3). Here, however, the requisite nexus is present. MDNR initiated an agreement with Cordova/California, accepting responsibility for disposal of certain wastes. Consequently I find that any nexus requirement has been met.

Other cases have emphasized that liability attaches to the party responsible for deciding the manner in which the substance was disposed. *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. 651 (N.D.Ill.1988); *United States v. A & F Materials Co., Inc.,* 582 F.Supp. 842 (S.D. Ill.1984). Here MDNR constructively took possession of the substances by entering into an agreement with Cordova/California wherein MDNR allegedly undertook the obligation to dispose of wastes on the site and to operate purge wells. Accepting the alle-

gations in the complaint as true, MDNR had full authority to control the disposal of the substances and operation of the wells, and was the sole party responsible for these activities. Failure to operate the wells resulted in significant contamination. I find that this omission is exactly the type of behavior that CERCLA intended to include.

2. Arranged for Disposal:

Liability under section 107(a)(3) is further predicated upon a finding that the contract or arrangement was for "disposal or treatment." MDNR claims that plaintiff failed to allege that it "arranged to dispose of wastes" at the Site. Although the complaint alleges that the agreement with Cordova/California constitutes a "contract, agreement, or other arrangement for treatment or disposal of hazardous substances at the Site" (Paragraph 53), MDNR disregards this as a conclusory statement.

MDNR correctly states that the court need not accept conclusory allegations in the complaint as true for the purposes of deciding a motion to dismiss. *Vermilion, supra.* However, after reviewing the complaint I conclude that it sufficiently alleges, or at least allows one to reasonably infer that MDNR arranged for disposal of the pollutants. Though CERCLA does not define "arrange for," courts have consistently construed this broadly.

While the legislative history of CERCLA sheds little light on the intended meaning of this phrase [otherwise arranged for], courts have concluded that a liberal judicial interpretation is consistent with CERCLA's "overwhelmingly remedial" statutory scheme.

*Aceto Agr. Chemical Corp.,* 872 F.2d at 1373, 1380 *citing NEPACCO,* 810 F.2d at 733; *Dedham Water Co.,* 805 F.2d at 1081; *Conservation Chemical Co.,* 619 F.Supp. at 192; *U.S. v. Mottolo,* 605 F.Supp. 898 at 902 (D.N.H.1985).

I find that the complaint sufficiently alleges that MDNR arranged for the disposal of hazardous substances at the Site and consequently is subject to liability under section 107(a)(3).

### D. Congressional Intent:

MDNR argues that it is contrary to the Congressional intent in CERCLA to impose liability for remedial action taken by a state. MDNR suggests that such a policy would create an incongruous disincentive for undertaking remedial actions. The purpose of CERCLA is certainly to encourage remedial and removal actions. However, by imposing strict liability on broad categories of defendants, Congress also evidenced its intent to make the responsible parties pay for the costs of the cleanup. The cases have repeatedly interpreted CERCLA in view of its dual purposes.

First, Congress intended that the federal government be immediately given the tools necessary for a prompt and effective response to the problems of national magnitude resulting from hazardous waste disposal. Second, Congress intended that those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created.

*Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir. 1986) (citing *United States v. Reilly Tar & Chemical Corp.*, 546 F.Supp. 1100, 1112 (D.Minn.1982).

Here, the complaint alleges that MDNR's supposed remedial action only exacerbated the contamination. Further, MDNR's involvement was purportedly more than mere regulation or even failure to regulate. In this situation, I am satisfied that if CPC is able to prove its allegations, it would be consistent with the purposes of CERCLA to hold MDNR liable.

### E. Emergency Responses under Section 9607(d)(2):

MDNR also suggests that it is exempt from liability under section 107(d)(2). 42 U.S.C. § 9607(d)(2). This provision allows that states shall not be liable for damages resulting from actions it took in response to an emergency, unless the state acted with gross negligence. If MDNR is able to offer evidence sufficient to convince the court that MDNR was indeed responding to an emergency, it may be entitled to dismissal from the suit at that time. MDNR has not submitted any evidence to this effect. CPC is not required to allege that no emergency existed, or that MDNR's behavior was grossly negligent in order to state a claim under CERCLA. I therefore reject this argument.

### F. Rule 11 Sanctions:

MDNR urges the court to impose sanctions upon plaintiff's counsel under Fed.R.Civ.P. 11 for relying upon a Special Masters opinion (*United States v. Stringfellow*) and related media articles as "authority" and for failing to cite counsel to the relevant portions of a lengthy transcript. Though plaintiff's reference to the *Stringfellow* opinion may have been misleading, the fact that it was indeed only an opinion of a Special Master was clearly footnoted. I do not believe anyone was truly misled or injured by this citation. The court did not rely on the *Stringfellow* opinion in denying MDNR's motion. Therefore I do not find sanctions appropriate.

Local Court Rule 30(b) provides that copies of unreported cases cited in a brief or memorandum shall be furnished to the court and opposing counsel. Plaintiff's counsel did not attach a copy of the *Stringfellow* decision to the brief. However, counsel noted that the opinion was announced in open court and submitted a transcript when it became available. Defendant's counsel requested a transcript of the proceeding and was provided with one. The fact that the relevant portions of that transcript were not cited may have been discourteous, but I do not believe that it rises to the level of being sanctionable. Defendant's motion for sanctions is denied.

### V. CONCLUSION

Plaintiff alleges all of the necessary elements for asserting a claim under CERCLA, 42 U.S.C. §§ 9607, 9613. Accepting plaintiff's allegations as true, MDNR's association was not merely regulatory in nature. Rather, the complaint alleges that MDNR was actively involved in removing

waste from the Site, and undertaking to operate purge wells. Consequently, MDNR is subject to liability under section 107(a)(2). MDNR is also a responsible party under section 107(a)(3) as a party who arranged for disposal of hazardous wastes at the Site. MDNR's motion to dismiss for failure to state a claim for which relief can be granted is therefore denied.

### ORDER

In accordance with the opinion filed this date,

IT IS ORDERED that defendant Michigan Department of Natural Resources' motion to dismiss for failure to state a claim for which relief can be granted is denied.

IT IS FURTHER ORDERED that defendant Michigan Department of Natural Resources' motion for sanctions is denied.