UNITED STATES of America and the
State of Washington, Plaintiffs,

v.

The WESTERN PROCESSING COMPA-
NY, INC., et al.; the Boeing
Company, et al., Defendants.

The BOEING COMPANY,
Third–Party Plaintiff,

v.

A & A ANDERSON TANK SERVICE,
LTD., et al., Third–Party and
Cross–Claim Defendants.

AMERICAN TAR COMPANY, et al.,
Third–Party Plaintiffs,

v.

A & A ANDERSON TANK SERVICE,
LTD., et al., Third–Party and
Cross–Claim Defendants.

Jack and Leah PINCHEV, Third–Party
Defendants and Third–Party Plaintiffs,

v.

UNITED STATES of America, and
State of Washington, Third–Party
Defendants.

Nos. C89–214M, C83–252M
and C89–224M.

United States District Court,
W.D. Washington,
at Seattle.

April 3, 1991.

William A. Gould, Perkins & Coie, Se-
attle, Wash., for Boeing Co.

Marcus B. Nash, Stafford, Frey, Cooper
& Stewart, Seattle, Wash., for NW Steel
Rolling Mills, Inc. and NW Steel Rolling
Mills Liquidating Trust.

Frederick O. Frederickson, Michael J.
Swofford, Graham & Dunn, Seattle, Wash.,
for Security Pacific Bancorporation North-
west.

Ronald A. Franz, Carney, Stephenson,
Badley, Smith & Spellman, Seattle, Wash.,
for Liquid Waste Disposal Co.

Garmt J. Nieuwenhuis, pro se.

Glen Andrew Anderson, Atty. Gen.'s Of-
fice, Torts, J. Tanya Barnett, Laurie Sil-
lers–Halvorson, Atty. Gen.'s Office, Ecolo-
gy Div., Olympia, Wash., Jon Peter Fergu-
son, Atty. Gen.'s Office, Tort Claims Div.,
Seattle, Wash., for Washington State.

Susan L. Barnes, U.S. Atty.'s Office, Seattle, Wash., David W. Zugschwerdt, U.S. Dept. of Justice, Environment and Natural Resources Div., Washington, D.C., for U.S.

Peter H. Haller, Ater, Wynne, Hewitt, Dodson & Skerritt, Seattle, Wash., for Atlantic Richfield Co., Bethlehem Steel Corp., Chevron U.S.A., Inc., Flecto Coatings Ltd., John Fluke Mfg. Co., Heath Techna Aerospace Co., Morton Thiokol Inc., Pacific Propellor Inc., Safety Kleen Inc., Seattle Times Inc., Pittsburgh & Midway Coal Min. Co., Western Pneumatic Tube Co. and Nortar, Inc.

Jeffrey B. Wihtol, Lindsay, Hart, Neil & Weigler, Portland, Or., Peter H. Haller, Ater, Wynne, Hewitt, Dodson & Skerritt, Seattle, Wash., for American Tar Co.

Larry Bruce Alexander, Seattle, Wash., for Widing Transp. Inc.

John R. Allison, Betts, Patterson & Mines, Seattle, Wash., for Crosby & Overton Inc.

Lisa M. Stone, Stoel, Rives, Boley, Jones & Grey, Seattle, Wash., Kevin Q. Davis, Stephen S. Walters, Stoel, Rives, Boley, Jones & Grey and Richard D. Bach, Portland, Or., for Precision Castparts Corp., Intern. Controls Corp. and Radiation Intern.

Marc A. Bateman, Richard M. Barney, Barney & McAdams, Seattle, Wash., for Ace Galvanizing Co. and Pontius Trucking.

Richard John Watkins, Cable, Langenbach, Henry, Watkins & Kinerk, Seattle, Wash., for Ryan & Haworth Co.

James Morton Beecher, Hackett, Beecher & Hart, Seattle, Wash., for RSR Corp.

Robert Farnum Bakemeier, Jeffrey Wayne Leppo, Jeanette DiScala McGraw, Bogle & Gates, Seattle, Wash., for Lockheed Shipbuilding & Const. Co., Davis Walker Corp. and McMillan Bloedel.

Clark J. Davis, Davies Pearson P.C., Tacoma, Wash., for Bayside Waste Hauling & Transp. Co.

Robert Jerome Grenier, Seattle, Wash., for Amalgamated Services Inc.

Victoria Jensen Bjorkman, Lawrence E. Hard, LeSourd & Patten, P.S., Seattle,

Wash., for Union Oil Co. of Cal., GATX Tank Storage Terminal Corp., Northwest Tank Service and Canadian Forest.

Jerry H. Kindinger, James M. Shaker, Sharon J. Bitcon, Ryan, Swanson & Cleveland, Seattle, Wash., for Lee & Eastes Tank Lines, Inc., Inland Transp. Co., Inc., Pay 'N Save Corp. and South Center Oil Inc.

John P. Lycette, Jr., Seattle, Wash., for Nat. Transfer Inc.

James Morton Beecher, Hackett, Beecher & Hart, Richard Lee Sessions, Seattle, Wash., for Scott Galvanizing Co., Inc.

Benjamin Gould Porter, George, Hull & Porter, Seattle, Wash., for Color Tech Inc. and Asko Processing Inc.

Joel Sherwood Summer, Univar Corp., Legal Dept., Seattle, Wash., for Univar Corp. and Pacific Resins & Chemicals Inc.

Scott A. Smith, Short, Cressman & Burgess, Seattle, Wash., for Tree Island Steel Co. Ltd.

Terence K. McGee, Thomas Anderson Sherwood, McGee & Reno, Seattle, Wash., for Continental Can Co.

Robert J. Downey, Law Offices of John Lockie, Seattle, Wash., for Norfin Inc.

Norfin Inc., Donald L. Sneelman, c/o Herb Lakefish NF Corp., pro se.

C. Stan Webert, Seattle, Wash., for Coastal Tank Cleaning Services Inc.

William D. Maer, Heller, Ehrman, White & McAuliffe, Seattle, Wash., for Anchor Post Products, Canron Inc. and Westak-North.

Shane Cornelius Carew, Ronald A. Franz, Carney, Stephenson, Badley, Smith & Spellman, Seattle, Wash., for Quigg Bros-McDonald Inc., Jack Pinchev and Leah Pinchev.

Preston Niemi, Seattle, Wash., for A J Zinda Co.

Dennis Smith, Janet E. McKinnon, Wilson, Smith, Cochran & Dickerson, and Jeffrey Lynn Carey, Seattle, Wash., for Pozzi Bros. and Lumber Trucking Service.

James T. Johnson, Seattle, Wash., for Tacoma Hauling Inc., Tacoma Haul-

ing/Gunter Bros. and Tacoma Hauling/Jack Creager Trucking.

Gary Michael Abolofia, Bellevue, Wash., for Culligan Water Service.

David Utevsky, Cynthia R. First, Foster Pepper & Shefelman, Seattle, Wash., for Hearst Corp.

William A. Helsell, Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, Wash.

ORDER GRANTING SECOND MOTION OF UNITED STATES FOR PARTIAL SUMMARY JUDGMENT AND DIS-MISSING IN PART RSR's FIRST AND SEVENTH COUNTERCLAIMS

McGOVERN, District Judge.

## I. PROCEDURAL BACKGROUND

This Court previously disposed of RSR Corporation's (RSR) Second through Sixth and Eighth Counterclaims concerning indemnification and injunctive relief.

The First and Seventh Counterclaims survive that order and seek contribution from the United States and a declaration of RSR's entitlement to such relief based in part upon the Environmental Protection Agency's (EPA) conduct concerning the Western Processing Site prior to the Agency's emergency removal action there in 1983.

The United States seeks partial dismissal of these counterclaims based on lack of subject matter jurisdiction or failure to state a claim upon which relief can be granted. Alternatively, the United States seeks summary judgment against RSR on these counterclaims to the extent that they depend on averments that EPA "directed and advised several generators and transporters to ship their wastes to Western Processing." (RSR counterclaim ¶ 67.)

Defendant/counterclaimant Union Oil Company of California (Unocal), Third–Party Plaintiffs GATX Tank Storage Terminals Corp. (GATX) and Northwest Enviro-Service, Inc. (Northwest EnviroService) have asserted similar EPA-based claims against the United States. These parties (referred to collectively as Unocal), therefore, submitted a substantial memorandum in support of RSR's position in order to protect their own interests. RSR submitted a brief memorandum with supporting material adopting Unocal's memorandum by reference.

## II. RSR'S/UNOCAL'S ALLEGATIONS

RSR makes three separate allegations concerning the EPA; Unocal, GATX, and Northwest EnviroService have made similar claims.

A. RSR claims that Western Processing, by November 19, 1980, had to obtain "interim status" under the Resource Conservation and Recovery Act (RCRA, 42 U.S.C. § 6925(e)) and meet certain performance standards. The U.S. admitted that the "interim status" performance standards designated Western Processing as a treatment and storage facility, not a waste disposal facility. (U.S. memo at 4, n. 8.) Despite this designation, EPA had direct knowledge that after November 19, 1980, Western Processing operated in violation of the interim status standards but was permitted to operate until April 1983.

B. RSR also claims that "[d]espite having direct knowledge, after November 19, 1980, that Western Processing was not in compliance with RCRA and of Western Processing's treatment[,] storage and disposal practices, EPA ... repeatedly directed and advised several generators and transporters to ship their wastes to Western Processing."

C. RSR claims that when EPA closed the site and undertook to stabilize it and conduct a preliminary cleanup, the EPA "acted recklessly, willfully and negligently, therefore causing significant contamination of the Western Processing site ...," and making the cost of cleanup significantly greater than it otherwise would have been.

RSR and Unocal note that the U.S. motion for dismissal is based only on the allegations of action or inaction of the EPA. Claims that the United States acted as a site operator and generator of waste remain, as do claims that the United States misrepresented Boeing's potential "fair share" to the detriment of RSR and Unocal

during the negotiations preceding the Phase II Consent Decree. Also, the present motion cannot exclude evidence of the EPA's action or inaction to the extent said activities were inconsistent with the National Contingency Plan.

## III. APPLICABLE STATUTES IN BRIEF

Pertinent parts of the regularly referenced statutes herein are briefly described for convenience as follows:

A. CERCLA § 107 (42 U.S.C. § 9607): Classes of potentially responsible parties: owner, operator, transporter, or generator.

B. CERCLA § 113 (42 U.S.C. § 9613): Any person may seek contribution from any other person.

C. CERCLA § 120 (42 U.S.C. § 9620): Federal Government to be treated as any other private party, including liability under Section 107.

## IV. UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT

The arguments of the United States and the opposition of RSR and Unocal are summarized under the following subheadings. Following the summaries under each subheading is the Court's analysis and conclusion.

### A. *Sovereign Immunity.*

■ The United States argues that it has not waived its sovereign immunity with respect to the contribution claims asserted by RSR based on EPA's regulatory activities. Such waivers must be unequivocally expressed, *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980) and should be strictly construed in favor of the United States. *Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986). There is no question, argues the U.S., that Congress expected government agencies to shoulder their proportionate share of CERCLA response costs when they have acted as owners, operators, generators or transporters:

Each department, agency, and instrumentality of the United States ... shall be subject to, and comply with, this chapter in the same manner and to the same extent ... as any nongovernmental entity, including liability under section 9607 of this title.

CERCLA Section 120(a) (42 U.S.C. § 9620(a)). This does not mean, however, argues the U.S., that Congress intended EPA regulatory and clean-up activities to give rise to such contribution liability. If EPA's clean-up activities could give rise to CERCLA liability, this would violate the fundamental principle that "those who benefit financially from a commercial activity [should] internalize the health and environmental costs of that activity into the costs of doing business." S.Rep. No. 848, 96th Cong., 2d Sess. 13 (1980), *reprinted in* 1 Senate Committee on Environment and Public Works, *A Legislative History of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980* 320 (1983). Only if RSR and Unocal can establish that the EPA's clean-up conduct was inconsistent with the National Contingency Plan (a point not conceded), could the amount the Governments are otherwise entitled to recover be reduced to account for the inconsistency.

Reading CERCLA Section 120(a) as a waiver of sovereign immunity for the EPA in carrying out its duties is unwarranted and directly contrary to the strict construction in the Government's favor on sovereign immunity issues. In *United States v. Hardage,* No. CIV–86–1401–P (W.D.Okla. November 22, 1989), the Court found no CERCLA Section 120 waiver for allegations of EPA's substandard remedial work, and concluded that many of the concerns could appropriately be considered as part of a determination of consistency with the National Contingency Plan. *See also B.R. Mackay & Sons v. United States,* 633 F.Supp. 1290, 1296 n. 9 (D.Utah 1986) (CERCLA does not waive sovereign immunity when removal action is inconsistent with the NCP).

RSR and Unocal argue that the United States' argument is undercut by the language of Section 107(d)(1):

Except as provided in paragraph (2), no person shall be liable under this subchapter for costs or damages as a result of actions taken or omitted in the course of rendering care, assistance, or advice in accordance with the National Contingency Plan ("NCP") or at the direction of an on-scene coordinator appointed under such plan, with respect to an incident creating a danger to public health or welfare or the environment as a result of any releases of a hazardous substance or the threat thereof. *This paragraph shall not preclude liability for costs or damages as the result of negligence on the part of such person.*

42 U.S.C. § 9607(d)(1) (emphasis added). The United States is a "person" under CERCLA (42 U.S.C. § 9601(21)), so is liable if it negligently renders care or advice which is inconsistent with the NCP. A cause of action for negligence of the EPA may be brought as a separate claim under Section 107(d)(1).

The United States replies arguing first that CERCLA Section 113(f)(1), 42 U.S.C. § 9613(f)(1), authorizes contribution actions only for liable or potentially liable parties, *i.e.*, owners, generators, or transporters within the meaning of CERCLA Section 107(a)(1)–(4). No contribution action is authorized under Section 113(f)(1), and the waiver of sovereign immunity of Section 120(a) is not triggered.

It would be absurd, argues the United States, to construe CERCLA to mean that the United States would be liable whenever EPA's clean-up activities result in a release or threatened release of hazardous substances—even if they were already at the site—as this would create a new defense to be asserted on a counterclaim whenever the Government initiated a clean-up action.

Congress did not intend such a result: first, those who benefit financially from a commercial activity must internalize the health and environmental costs as costs of doing business; second, liability is strict, subject only to specific, enumerated defenses; and third, Congress specifically considered and rejected an amendment proposed by Senator Helms that would have added government misconduct and negligence as a separate defense to CERCLA liability. (Numerous citations from U.S. memo are omitted.) Section 107(d), concerning liability for negligence, is not an authorization for litigation against the United States, but merely clarifies Congress' intent that the CERCLA remedial scheme not be viewed as occupying the field to the exclusion of tort claims.

*Analysis*

For the reasons stated by the United States, RSR's counterclaims must be dismissed for lack of subject matter jurisdiction. It cannot be argued with full conviction that the EPA, in carrying out its duties under the statute, assumes the risk of becoming a liable party as an "owner/operator" under CERCLA Section 107, and the idea was rejected by Congress. Moreover, a waiver of sovereign immunity cannot be based on such tenuous ground as an implication, especially one of such ghostly manifestation. Concerns about the effectiveness of the EPA's remedial work should be addressed as part of a determination for consistency with the National Contingency Plan. To address such concerns at this point in the ill-conceived manner of characterizing the EPA as an owner/operator would muddle the rationale underlying the statutory scheme. The view of Congress was that the listed potentially responsible parties should assume clean-up responsibility as a part of their cost of doing business. Limited defenses were provided, and it would make no sense to provide an EPA negligence defense to shift the clean-up cost burden in this contribution/allocation litigation. In carrying out the remedial work necessary at the site, the EPA is not analogous to an agency of the Federal Government that may have generated its own waste and transported it to the site. The language in Section 107 cannot be considered a waiver of sovereign immunity for the purpose of charging the EPA with negligence as an owner/operator under CERCLA; as a statement of how much is preempted by the Federal Government under CERCLA, it is more meaningful. There being no waiver of sovereign immu-

nity with respect to contribution claims based on EPA's regulatory activities, there is no subject matter jurisdiction over RSR's counterclaims.

### B. *Failure to State a Claim Upon Which Relief Can Be Granted.*

■ Even if the Court were to find that sovereign immunity does not preclude subject matter jurisdiction, the United States argues that RSR/Unocal have failed to state a claim upon which relief can be granted.

First, the statutory scheme was designed to compel commercial concerns to internalize the costs of waste disposal; the United States is to contribute its share when it acts in a fashion analogous to that of a business concern. That does not mean that Congress intended to shift liability back to the taxpayers whenever EPA's regulatory efforts at hazardous waste sites are less than successful. The United States cited two CERCLA cases reflecting the ideas that neither inadequate enforcement of environmental regulations, nor shortcomings by a state in attempting to remediate hazardous waste problems constitutes ownership or control such that a government entity is considered in the class of liable parties. *United States v. Dart Industries, Inc.*, 847 F.2d 144 (4th Cir.1988); *New York v. City of Johnstown*, 701 F.Supp. 33 (N.D.N.Y.1988).

Moreover, in enacting CERCLA, the United States argues, Congress rejected an amendment that would have made government misconduct and negligence a separate defense to CERCLA Section 107 liability and placed severe limits on defenses available to defendants.

In response, RSR and Unocal argue that negligence can be a basis for liability under 42 U.S.C. § 9607(a)(2). RSR and Unocal cite *CPC International, Inc. v. Aerojet–General Corp.*, 731 F.Supp. 783 (W.D.Mich. 1989) where a potentially responsible party (PRP) sought to recover response costs from the Michigan Department of Natural Resources (MDNR) for negligent activities at the site. The PRP argued that MDNR was a owner/operator under CERCLA (§ 9607(a)(2)). The Court held that "owner-operator" should be determined by the following definition:

> The owner-operator of a vessel or a vacility [sic] has the capacity to make timely discovery of oil discharges. The owner-operator has power to direct the activities of persons who control the mechanisms causing the pollution. The owner-operator has the capacity to prevent and abate damage.

*Id.* at 788. RSR/Unocal argues that since EPA did not enforce the interim status of Western Processing when it had the capacity to do so, it is liable as an owner/operator. As to the argument that mere regulatory activity will not subject a state agency to liability as an owner/operator, the Court generally agreed, but stated:

> Such regulatory activity will ordinarily not designate one as an owner-operator, but when a party assumes control of an activity and then fails to perform, that party should bear the responsibility for any pollution which results.

*Id.* at 788.

RSR & Unocal also argue that EPA advice to transporters and generators can form a basis for liability under 42 U.S.C. § 9607(a)(3). They allege that EPA advised transporters they could deliver waste to Western Processing at the time it knew Western Processing was not in compliance with the interim RCRA standards. The *CPC International* Court held that legal title or actual possession is not necessary where a party had control over the handling of a substance:

> We believe requiring proof of personal ownership or actual physical possession of hazardous substances as a precondition for liability under CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3), would be inconsistent with the broad remedial purposes of CERCLA.

731 F.Supp. at 790. Thus, because it cannot be said that RSR and Unocal can prove no set of facts in support of their claims that would entitle them to relief, judgment on the pleadings would be inappropriate.

The United States replies to these arguments contending that not only is no contri-

bution action authorized, but no CERCLA action based on negligence or misfeasance is available. The *CPC International Inc.* case cited by Unocal on the issue of determining owner/operator status is distinguishable: the Michigan Department of Natural Resources entered into an agreement with the site owner/operator whereby MDNR undertook the obligation to dispose of wastes on the site and to operate and purge wells with full authority to control disposal of substances and operation of the wells; the Court, however, cited with approval certain cases to the extent they held that regulatory or remedial activities did not subject state governmental entities to liability under CERCLA as owner/operators or generators; "MDNR's involvement was purportedly more than mere regulation or even failure to regulate." 731 F.Supp. at 791. Here, EPA's activities have been exclusively regulatory and remedial, and no claim for liability under CERCLA Section 107(a)(2) has been stated.

*Analysis*

For the reasons advanced by the United States, EPA's regulatory activities do not render it an owner/operator under CERCLA. The impropriety and illogic of construing the statute to contemplate that the negligence or misfeasance of the EPA would cast it as a potentially liable owner, operator, transporter, or generator has already been discussed. The EPA was not acting in any of those capacities as it carried out its regulatory functions, and it requires contorted reasoning to conclude otherwise. CERCLA provided for quarrels with remedial efforts to be addressed in a cost recovery action (here cause No. C83–252M) and in comparison with the National Contingency Plan. To the extent that RSR's contribution claims are based upon the EPA's regulatory activities, RSR has failed to state a claim upon which relief can be granted.

C. *Summary Judgment.*

As the Court has concluded that there is no waiver of sovereign immunity and that RSR has failed to state a claim upon which

relief can be granted, it need not address the matter of summary judgment.

## V.   CONCLUSION

In accordance with the foregoing analysis of the arguments as to RSR's remaining counterclaims, there is no subject matter jurisdiction and no claim stated upon which relief can be granted. RSR's First and Seventh Counterclaims are DISMISSED to the extent these claims depend upon the averments of Paragraphs 64, 65 and 67–69 of RSR's Counterclaims concerning EPA's conduct with respect to the Western Processing Site between November 16, 1980 and the completion of the Agency's emergency removal action at the site in 1983.