**RYLAND GROUP, INC., Plaintiff,**

v.

**PAYNE FIRM, INC., et al., Defendants.**

No. 1:04cv381.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 21, 2005.

Christopher S. Habel, Frost Brown Todd LLC, Cincinnati, OH, William Taylor Robinson, III, Greenebaum Doll & McDonald, Covington, KY, for Plaintiff.

Bryce A. Lenox, Thompson Hine LLP, Cincinnati, OH.

Andrew L. Kolesar, III, Thompson Hine LLP, Cincinnati, OH, Michael L. Hardy, Thompson Hine & Flory, Cleveland, OH, Joseph Michael Reidy, Kevin Robert McDermott, Catherine L. Strauss, Schottenstein, Zox & Dunn, Columbus, OH, for Defendants.

DECISION AND ENTRY SUSTAINING MOTION TO DISMISS OF THIRD–PARTY DEFENDANT ROY HENSLEY, INC. (DOC. # 32); DEFENDANTS' STATE LAW CLAIMS AGAINST THIRD–PARTY DEFENDANT REMAIN

RICE, District Judge.

According to Plaintiff's Amended Complaint (Doc. # 42), Defendant Harry Thomas, Jr. ("Thomas") purchased approximately 25 acres of land located in Butler County, Ohio, in late 1999. Since that property had previously been used as a recreational gun club, metal pellets containing lead and arsenic had been distributed throughout its soil. After Thomas had purchased the property, he developed it into residential building lots which were subsequently sold to Plaintiff. Before that sale, Thomas attempted to remediate the site; however, those efforts proved to be unsuccessful, and lead and arsenic remain as contaminants in the soil. As a result, many of those who bought lots from Plaintiff sued, and the Plaintiff has repurchased nearly all of the lots that it had sold. In addition, Plaintiff has entered into an administrative consent order with the United States Environmental Protection Agency to remediate the site, which will cause it to incur substantial costs. Plaintiff brings this litigation to recover damages from, *inter alia*, Thomas and certain related parties (collectively "Thomas Defendants"). The Thomas Defendants, in turn, have set forth in their Answer to Plaintiff's Amended Complaint, a Third–Party Complaint against Ray Hensley, Inc. ("Hensley"), seeking, in the main, indemnification and/or contribution.[1] *See* Doc. # 43.

This case is now before the Court on Hensley's Motion to Dismiss (Doc. # 32), in which it argues that the Third–Party Complaint fails to state a federal claim upon which relief can be granted. As a means of analysis, the Court will initially set forth the standards it must apply whenever it rules upon a defendant's request to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In *Prater v. City of Burnside, Ky.*, 289 F.3d 417 (6th Cir.2002), the Sixth Circuit reiterated the fundamental principles which govern the ruling on a motion to dismiss under Rule 12(b)(6):

1. The Thomas Defendants set forth the identical Third–Party Complaint against Hensley in their Answer to Plaintiff's initial Complaint. *See* Doc. # 21.

The district court's dismissal of a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is also reviewed de novo. *Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir. 1999), *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). When deciding whether to dismiss a claim under Rule 12(b)(6), "[t]he court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Id.* (citation omitted). A claim should not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Buchanan v. Apfel,* 249 F.3d 485, 488 (6th Cir.2001) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

*Id.* at 424, 289 F.3d 417. In *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), the Supreme Court noted that Rule 8(a)(2) of the Federal Rules of Civil Procedure merely requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 512, 122 S.Ct. 992. Therein, the Court explained further:

> Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. *See id.,* at 47–48, 78 S.Ct. 99; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168–169, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1202, p. 76 (2d ed.1990).

*Id.* at 512–13, 122 S.Ct. 992. *See also, Trollinger v. Tyson Foods, Inc.,* 370 F.3d 602, 615 (6th Cir.2004) (noting that, at the motion to dismiss stage of proceedings, court will assume that general allegations include specific facts needed to prove a claim).

In their Third–Party Complaint against Hensley, the Thomas Defendants allege that Hensley, a soil stabilization contractor, was retained to perform soil mixing at the site, using a large rototilling machine to mix lime into the soil in order to remediate the lead contamination. Doc. # 43 at 32. The Thomas Defendants set forth four claims against Hensley, to wit: 1) a claim for contribution under § 113(f) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613(f); 2) a claim for indemnification under the law of Ohio; 3) a claim for contribution under the law of Ohio; and 4) a claim of negligence under Ohio law.

In its motion, Hensley focuses exclusively upon the Thomas Defendants' contribution claim under CERCLA. A party can be held liable for contribution under § 113(f) of CERCLA, only if it is subject to liability under § 107(a) of that statute, 42 U.S.C. § 9607(a). *See* 42 U.S.C. § 9613(f)(1) (providing that "[a]ny person may seek contribution from any other person who is liable or potentially liable under [42 U.S.C. § 9607(a)]");

*Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648, 653 (6th Cir.2000). In order to establish that a party is or may be liable under § 107(a), the following elements must be established, to wit: 1) that the allegedly liable party is within one of the four categories of potentially responsible parties set forth in § 107(a); 2) that the site is a "facility," as defined by § 101(9) of CERCLA, 42 U.S.C. § 9601(9); 3) that there has been a release or threatened release of hazardous substances at the "facility"; 4) that the party seeking to impose liability incurred necessary "response costs," responding to that release or threatened release; and 5) that the costs incurred are consistent with the National Contingency Plan. *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 602–03 (2nd Cir.1999); *Kalamazoo River Study Group v. Rockwell International*, 171 F.3d 1065, 1068 (6th Cir.1999); *Centerior Service Co. v. Acme Scrap Iron & Metal*, 153 F.3d 344, 347–48 (6th Cir.1998).

■ Herein, the parties focus strictly upon the first element of liability under § 107(a), i.e., whether Hensley is within one of the four categories of potentially responsible parties set forth in that statutory provision. According to the Thomas Defendants, Hensley can be held liable as an operator. Hensley argues that the Thomas Defendants' claim for contribution under CERCLA fails to state a claim upon which relief can be granted, because the allegations in their Answer and the Third–Party Complaint establish that it (Hensley) was not an operator of the site. The Court begins its analysis of that argument by initially examining the meaning of the term "operator."

■ As is indicated, the "operator" of a facility can be held liable under § 107(a). The term operator of a facility is circuitously defined by CERCLA as a person operating such a facility. 42 U.S.C. § 9601(20)(A). In *United States v. Bestfoods*, 524 U.S. 51, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998), the Supreme Court, noting that the statutory definition of "operator" was not helpful, concluded that the term should be given its ordinary or natural meaning. *Id.* at 66, 118 S.Ct. 1876. The ordinary or natural meaning of operator, as used in CERCLA, is "someone who directs the workings of, manages, or conducts the affairs of a facility." *Id.* The *Bestfoods* Court added that "[t]o sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *Id.* at 66–67, 118 S.Ct. 1876. In summary, the *Bestfoods* Court explained that "[i]n our enquiry into the meaning Congress presumably had in mind when it used the verb 'to operate,' we recognized that the statute obviously meant something more than mere mechanical activation of pumps and valves, and must be read to contemplate 'operation' as including the exercise of direction over the facility's activities." *Id.* at 71, 118 S.Ct. 1876. *Accord, United States v. Township of Brighton*, 153 F.3d 307, 313 (6th Cir. 1998)

Herein, the Thomas Defendants have alleged in their Answer and Third–Party Complaint that the site was previously used as a gun club and that shooting thereon had resulted in lead and arsenic being dispersed throughout the soil thereon. Doc. # 43 at 3. In order to remediate that contamination, a corporate affiliate of the Thomas Defendants entered into a contract with Co–Defendant Payne Firm, Inc. ("Payne"), under which Payne agreed to investigate the contamination of the soil and to develop a plan to remediate that

contamination, as well as to perform the necessary sampling to confirm that the plan had been properly implemented. *Id.* To carry out the plan that Payne had developed, Thomas hired Hensley to rototill the soil. *Id.* at 8. A supervisor employed by Payne directed the depth to which Hensley was to rototill and controlled the area to be so treated with flags. *Id.* Indeed, Payne effectively directed and controlled all activities that took place in the contaminated areas of the site (i.e., the areas that were in need of remediation). *Id.*

The Thomas Defendants argue that they have adequately alleged that Hensley was an operator of the site, since its mixing of soil with the rototiller constituted hands-on activity which resulted in the dispersal of pollutants. In support of that proposition, the Thomas Defendants rely upon *CPC International, Inc. v. Aerojet–General Corp.*, 731 F.Supp. 783 (W.D.Mich.1989). Therein, the District Court concluded the complaint sufficiently alleged that the Michigan Department of Natural Resources ("MDNR") was an operator of a hazardous waste site, given the allegations that it had engaged in "hands-on" activities there by removing and disposing of waste and by operating purge wells, all of which resulted in the contamination of the groundwater in the area. *Id.* at 788. That decision does not cause this Court to conclude that the Thomas Defendants have stated a claim of operator liability against Hensley. Therein, the District Court did not discuss the question of whether the MDNR had discretion over activities at the site. It bears emphasis that this Court is required to follow the opinion of the United States Supreme Court in *Bestfoods*, an opinion which was filed about eight and one-half years after *CPC International* was decided. In *Best-*

*foods*, the Supreme Court distinguished between an entity which exercised discretion and one which merely activated valves and pumps. Under *Bestfoods*, hands-on activities alone are not sufficient to establish that a party is liable as an operator of a hazardous waste site, since the party mechanically activating the valves and pumps acts in a hands-on manner. Herein, the allegations in the Thomas Defendants' Answer and Third Party Complaint (Doc. # 43) establish that, rather than exercising discretion, Hensley was the functional equivalent of the entity mechanically activating pumps and valves. The Thomas Defendants do not allege that Hensley exercised any discretion over the activities at the site. On the contrary, the allegations in their Answer and Third–Party Complaint establish that Hensley's activities on site were completely controlled and directed by Payne, which selected the areas that Hensley would rototill and the depth to which it would conduct such operations.

Based upon the foregoing, the Court concludes that the allegations in the Thomas Defendants' Answer and Third–Party Complaint (Doc. # 43) establish that Hensley was not an "operator" as that term is used in CERCLA, which is the only basis cited by those Defendants for imposing CERCLA liability upon Hensley. Accordingly, the Court sustains Hensley's Motion to Dismiss (Doc. # 32). As a result, the First Claim for Relief in the Thomas Defendants' Third–Party Complaint against Hensley, a contribution claim under § 113(f) of CERCLA, is dismissed, leaving only their three state law claims to be resolved.[2]

---

**2.** In its Reply Memorandum, Hensley argues that the Court should decline to continue to

exercise supplemental jurisdiction over the Thomas Defendants' state law claims. *See* Doc. # 36 at 7–8. The Court will not address such an argument initially raised in a reply memorandum. However, Hensley remains free to file a motion requesting such relief.