IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 99-20020
_____


GERAGHTY AND MILLER, INC.,
            Plaintiff - Counter Defendant - Appellee,

                        versus

CONOCO INC.; CONDEA VISTA CHEMICAL COMPANY,
            Defendants - Counter Claimants - Appellants.


_____

Appeal from the United States District Court for the
Southern District of Texas
_____
December 14, 2000
Before POLITZ, GIBSON,[*] and HIGGINBOTHAM, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Conoco Inc. and Condea Vista Chemical Company appeal the district court's order granting summary judgment to Geraghty and Miller, Inc. ("G&M") in this environmental clean-up action. This case includes a claim under CERCLA, the Comprehensive Environmental Response, Compensation and Liability Act, as well as state common law claims. We affirm in part and, because a genuine issue exists as to certain material facts, we reverse in part.

The parties do agree on a sufficient number of background facts to set the stage. This dispute arises out of an

_____

[*]Circuit Judge of the Eighth Circuit, sitting by designation.

-1-

environmental clean-up at the Lake Charles Chemical Complex in Westlake, Louisiana. The Complex has been owned and operated by Conoco or Vista since 1961, and in 1968 Conoco began managing ethylene dichloride at the facility. Ethylene dichloride, a feedstock in the production of vinyl chloride monomer, is a "hazardous substance" as CERCLA defines that term. As a result of historic releases and migration, ethylene dichloride contamination occurred in soil from the surface to at least twenty-five feet down and in shallow groundwater zones.

The Louisiana Department of Environmental Quality required Conoco to investigate and address the ethylene dichloride contamination under state groundwater protection laws and regulations and federal and state solid waste laws and regulations. It also required Conoco to put in place a groundwater monitoring and assessment program pursuant to the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901-6992k (1994), and its corresponding regulations and their Louisiana state counterparts. As is often the case in such clean-ups, the process was set to take place in stages. Conoco and G&M entered into a contract on March 12, 1985 under which G&M was to furnish all required services for "Ground-Water Quality Assessment, Phase 2" at the Vinyl Chloride Monomer Plant Area and Waste Water Treatment Area ("the Plant") of the Complex. Vista was a third-party beneficiary under the contract.

Under the contract, G&M was to assess possible contamination beneath several suspected source areas at the Complex. It was to perform that assessment by 1) preparing design specifications for the installation of groundwater monitor wells and piezometers used to monitor possible groundwater contamination at the Complex; 2) installing the monitor wells and piezometers; and 3) sampling the monitor wells following installation. G&M completed the installation of fifty monitor wells on July 23, 1985.

For approximately the following year, G&M sampled the monitor wells and interpreted the monitoring data to determine the nature and extent of contamination. G&M submitted quarterly reports to Conoco/Vista to advise them of the results.

Sometime before May 1988, Conoco/Vista began to suspect potentially serious technical and physical deficiencies in three of the monitor wells G&M had installed. They were concerned that such deficiencies were aggravating the contamination. Conoco/Vista received approval from the Louisiana Department in May 1988 to plug and abandon those wells. Conoco/Vista allege that they uncovered physical evidence that the three wells were not installed according to the contract specifications, and they sent a series of letters to G&M concerning the deficiencies. In December 1989, Conoco/Vista plugged and abandoned a fourth well, and they allege that this well also was not installed according to specifications.

These experiences caused Conoco/Vista to question the soundness of the remaining wells and other parts of the groundwater

-3-

monitoring system. Conoco/Vista and G&M discussed who was responsible for the costs associated with these allegedly defective wells, but they were unable to resolve the issue. On August 27, 1990, the parties entered into the Groundwater Wells Interim Agreement. The Interim Agreement called for the parties to agree upon criteria for determining whether a given monitor well was "suspect" or "not suspect" of being improperly installed, and to agree upon criteria for determining whether a given well was "properly" or "not properly" installed. Once the criteria were in place, the parties would apply them to each of the wells to determine which needed to be removed and who would bear the costs. That never occurred, however, because the parties never agreed on the criteria.

The parties entered into the Interim Agreement to allocate responsibility between them for the costs of plugging and abandoning additional wells that they were to agree upon as being "suspect." G&M maintains that there was no other purpose for entering into the deal, but Conoco/Vista insist that the Interim Agreement gave the parties time to investigate the integrity of the wells while not allowing the statute of limitations to run on any defect claims that remained unresolved. Conoco/Vista assert that G&M received, as consideration for the deal, a release from approximately $250,000 in monitor well plugging and abandonment costs.

-4-

Conoco/Vista retained other environmental consulting firms to continue the groundwater assessment program. Upon the recommendation of one such consultant, Conoco/Vista plugged and abandoned the remaining G&M-installed wells in 1993 and replaced them.

In April 1993, Conoco/Vista filed suit against G&M in Texas state court, alleging state common law causes of action. During the course of that litigation, the Texas Court of Appeals held that the language in the Interim Agreement concerning a possible tolling and extension of the statute of limitations was ambiguous as a matter of law.

In April 1997, with the state court lawsuit still pending, G&M filed the instant CERCLA action, seeking reimbursement from Conoco/Vista for G&M's past and future response costs. Conoco/Vista filed a counterclaim two months later, also seeking relief under sections 107 and 113 of CERCLA. Meanwhile, the state court case was trifurcated for trial, with the first phase focused on whether the Interim Agreement tolled the statutes of limitations. Trial began in phase one in November 1997 and, while the jury was deliberating, Conoco/Vista took a voluntary non-suit and the state court judge dismissed the lawsuit.

After the district court granted partial summary judgment to G&M, Conoco/Vista amended their counterclaim to omit their section 107 CERCLA claim and to add the state common law claims. Ultimately, G&M voluntarily dismissed its complaint, leaving only

Conoco/Vista's CERCLA section 113 and state common law counterclaims at issue.

Less than a month before this case was to begin trial, G&M unsuccessfully sought leave to file a partial summary judgment motion on the basis that Conoco/Vista's CERCLA counterclaim was time-barred. When the parties appeared for trial on the scheduled date, the district court discussed the case with counsel and suspended the start of the trial. Less than a week later, the district court granted summary judgment to G&M on several grounds including that the CERCLA claim was time-barred.

The district court held that Conoco/Vista's state common law claims were barred by Texas statutes of limitations; that G&M was not liable for contribution because it was not a "covered person" under CERCLA as an operator, arranger, or transporter of hazardous materials; and that the six-year limitation period of 42 U.S.C. § 9613(g)(2) (1994) barred Conoco/Vista's CERCLA claim. We address each of these issues, along with Conoco/Vista's complaint that the district court entered summary judgment without giving them notice and an opportunity to respond.

I.

The district court entered summary judgment for G&M without providing the notice required by Rule 56(c) of the Federal Rules of Civil Procedure. Conoco/Vista argue that they were unfairly prejudiced because they did not have notice that the district court was contemplating entering a dispositive order, nor did they have

-6-

an opportunity to respond or to present evidence.  We review under the harmless error standard.  See Nowlin v. Resolution Trust Corp., 33 F.3d 498, 504 (5th Cir. 1994).

By the time this case reached its trial date, G&M had filed three motions for partial summary judgment and had attempted to file a fourth.  The district court had granted G&M's motion that Conoco/Vista be declared "covered persons" under CERCLA, had denied G&M's motion that it be declared not to be a "covered person", and had yet to rule on G&M's motion seeking summary judgment on Conoco/Vista's state common law claims.  Conoco/Vista had filed briefs and affidavits in opposition to those three motions.  G&M had sought leave to file a motion that the remaining CERCLA claim be declared barred by the statute of limitations, but the district court denied leave because the motion was untimely.  Thus, all of the issues except the CERCLA statute of limitations had been fully briefed by the time the case was ready for trial.

When the district court entered its order granting complete summary judgment to G&M, the parties expected to be in the midst of a non-jury trial.  When they arrived for trial on the appointed day, the district court announced the view that it would be beneficial to take some time to narrow the issues so that the evidence could be streamlined.  The court indicated that it would review the file and directed the parties to return the following day to begin trial.  After its review, the district court concluded

that all of the claims were amenable to judgment as a matter of law.

While the district court erred by not observing the notice requirements of Rule 56(c), this procedural error was later cured. After the district court entered its summary judgment order, Conoco/Vista filed a motion for rehearing/new trial along with a brief on the CERCLA statute of limitations issue. In their motion, Conoco/Vista pointed out what they believed to be disputed material facts and offered citations to the record for those facts. They did not, however, submit any additional affidavits or documentary evidence.

Conoco/Vista pointed out that they had not received notice and an opportunity to respond to the CERCLA statute of limitations issue, as the court had denied G&M leave to file its partial summary judgment motion on that issue. To support their argument, Conoco/Vista attached an affidavit and an exhibit to their separate brief on the CERCLA statute of limitations issue.

The district court considered both the motion and the brief and determined that summary judgment was still appropriate. The district court thus revisited all of the issues in the summary judgment order. Conoco/Vista ultimately had an opportunity to be heard on all of the issues,[1] and the district court's post-summary judgment consideration and ruling cured any procedural defect. See

---

[1]Conoco/Vista admit in their brief on appeal that they had such an opportunity: "[T]he evidence Conoco and Vista would have presented to the court in response to the summary judgment motion was filed in connection with their motion for rehearing."

Barney v. IRS, 618 F.2d 1268, 1271 n.8 (8th Cir. 1980); United States v. Shelly's Riverside Heights Lot X, 859 F. Supp. 150, 151 (M.D. Pa. 1994).

District courts are empowered to enter summary judgment sua sponte. See Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Although we disagree with some of the district court's legal conclusions, its consideration of summary judgment in the first instance without notice and hearing was harmless error.

## II.

We turn now to the district court's rulings on the substantive legal issues. We review the grant of summary judgment de novo. See Uniroyal Chemical Co. v. Deltech Corp., 160 F.3d 238, 241 (5th Cir. 1998). G&M bears the burden of showing the absence of evidence to support Conoco/Vista's case, and Conoco/Vista must set forth specific facts demonstrating a genuine issue for trial. We view the facts in the light most favorable to Conoco/Vista and draw all reasonable inferences in their favor. If Conoco/Vista set forth specific facts essential to their claims, a genuine issue of material fact will preclude summary judgment. See Coleman v. Houston Indep. School Dist., 113 F.3d 528, 533 (5th Cir. 1997).

## A.

CERCLA contains different statutes of limitations for section 107(a) cost-recovery actions and for section 113 contribution actions. See 42 U.S.C. § 9613(g)(2)(B) (1994) (six-year statute for initial action for recovery of remedial costs under section

-9-

107(a), triggered by beginning of physical on-site construction); 42 U.S.C. § 9613(g)(3) (three-year period for contribution action under section 113, with three alternative triggering events: a prior judgment, an administrative order, or a judicially approved settlement). Whether a party is seeking recovery under section 107(a) or contribution under section 113 does not always determine the applicable statute of limitations. In cases such as this one where a party seeks contribution but none of the triggering events has occurred, Congress did not designate the statute of limitations.

The district court determined that Conoco/Vista's CERCLA claim is governed and barred by the six-year statute of limitations. The court characterized this as an initial action for the recovery of remediation costs and found that Conoco/Vista initiated remedial on-site construction in 1987. According to the district court's application, the statute of limitations expired in 1993. Because Conoco/Vista did not file their CERCLA counterclaim until 1997, the district court found it time-barred.

Conoco/Vista argue that their CERCLA contribution claim is governed by the three-year limitations period, as 42 U.S.C. § 9613(g)(3) is the only section that on its face applies to contribution actions. Conoco/Vista insist that their counterclaim was timely because it was filed before any of the triggering events contained in section 113(g)(3) occurred. Under their theory, it is indeterminate when the limitations period would ever expire.

In the alternative, Conoco/Vista assert that, even if section 113(g)(2) applies, the statute of limitations has not run or material facts are in dispute as to whether it has run. They further assert that G&M waived the affirmative defense of section 113(g)(2) by not properly or timely pleading it.

B.

The circuits are split on the appropriate statute of limitations to apply in a case that is neither a recovery claim under section 107 nor derivative of or responsive to any other formalized dispute. There are three basic approaches to the issue, see City of Merced v. R.A. Fields, 997 F. Supp. 1326, 1334 (E.D. Cal. 1998) (collecting cases), but our court has not yet adopted any of the three. Under the first approach, we would find that the plain language of section 113(g)(3) establishes no statute of limitations for this case. Under the second, we would use the six-year statute of limitations in section 113(g)(2), for reasons explained below. Under the third, we would use the three-year statute of limitations in section 113(g)(3) and import another triggering event from federal common law. See id.

We conclude that the Tenth Circuit's reasoning in favor of the second approach in Sun Co. v. Browning-Ferris, Inc., 124 F.3d 1187 (10th Cir. 1997), is the most persuasive. In Sun Co., the Tenth Circuit analyzes the statutory framework and applies it in a practical way. Its rationale begins with the explanation that

-11-

while section 113(f)[2] is the vehicle for bringing a contribution action, it does not create a new cause of action or create any new liabilities.  Rather, it is a mechanism for apportioning costs that are recoverable under section 107.  See id. at 1191 (citing cases).  In other words, a section 113 contribution action is a claim for collection of the costs referred to in section 107.  By definition, the Tenth Circuit reasons, a contribution action is merely one type of cost-recovery action.  See id. at 1192.  If there has been no prior section 107 cost-recovery action, a contribution action becomes an "initial action for recovery of the costs referred to in section 9607 of this title," and must be brought "within 6 years after initiation of physical on-site construction of the remedial action."  Id. (quoting 42 U.S.C. § 9613(g)(2)(B)).

We hold that the statute of limitations found in CERCLA section 113(g)(2) applies to initial contribution actions such as this.  If we were to accept Conoco/Vista's argument and apply section 113(g)(3), the statute of limitations would be indefinite

---

[2] Section 113(f) of CERCLA provides:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. . . .  In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.  Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f)(1) (1994).

because a triggering event might never occur. This result would undermine the certainty that statutes of limitations are designed to further.

Contrary to Conoco/Vista's argument, G&M did assert this affirmative defense in a sufficiently timely manner. G&M included the statute of limitations as an affirmative defense in its first responsive pleading, thereby putting Conoco/Vista on notice of the issue. Even though G&M initially relied on the limitations period of section 113(g)(3), a mere assertion of the defense satisfies the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. See Daingerfield Island Protective Soc'y v. Babbitt, 40 F.3d 442, 444-45 (D.C. Cir. 1994). Moreover, the pretrial order recited G&M's assertion that the CERCLA claim was barred by the statute of limitations, with a precise citation to the statute. Conoco/Vista were not surprised or prejudiced by the district court's consideration of the issue. See Allied Chem. Corp. v. Mackay, 695 F.2d 854, 855-56 (5th Cir. 1983); Hargett v. Valley Fed. Sav. Bank, 60 F.3d 754, 763 (11th Cir. 1995).

C.

Our review of the CERCLA statute of limitations issue does not end with our determination that section 113(g)(2) applies. We must next decide whether Conoco/Vista's response actions at the Complex are properly categorized as "remedial" or "removal" to determine whether the counterclaim is timely. See 42 U.S.C. § 9613(g)(2) (under subsection (A), an action for recovery of costs of a

"removal action" must be filed "within 3 years after completion of the removal action"; under subsection (B), an action to recover costs of a "remedial action" must be filed "within 6 years after initiation of physical on-site construction of the remedial action").

The district court determined that Conoco/Vista were engaged in ongoing remediation at the Complex and that physical on-site construction began in 1987.  It also determined that Conoco/Vista were currently involved in removal and remediation activities. Conoco/Vista argue that their counterclaim seeks recovery of costs for what can only be characterized as removal of the contamination. Not surprisingly, G&M agrees with the district court's determinations that remediation activities were in place and that they began in 1987.

Congress provided definitions for "removal"[3] and "remedial action,"[4] and the classification of the activity is determined as

[3]CERCLA defines "remove" or "removal" as:

the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under section 9604(b) of this title, and any emergency assistance which may be provided under the Disaster Relief and Emergency Assistance Act.

42 U.S.C. § 9601(23).

[4]CERCLA defines "remedy" or "remedial action" as:

those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. The term includes the costs of permanent relocation of residents and businesses and community facilities where

a matter of law.  See Advanced Micro Devices, Inc. v. National Semiconductor Corp., 38 F. Supp. 2d 802, 809 (N.D. Cal. 1999); United States v. Vertac Chem. Corp., 33 F. Supp. 2d 769, 782 (E.D. Ark. 1998).  In reviewing the undisputed facts and the parties' arguments concerning how we should apply the relevant law to those facts, it strikes us that confusion often results because the industry use of "remediation" is not synonymous with CERCLA's definition of "remedial."  Moreover, the CERCLA definitions are expansive enough that certain activities may well be covered by both.  This is a question of law with some complexity.  "Elements of either response action may overlap and semantics often obscure the actual nature of the cleanup performed."  Public Serv. Co. v. Gates Rubber Co., 175 F.3d 1177, 1182 (10th Cir. 1999).

Although the cases on this issue tend to be highly fact-specific, certain principles emerge.  We have often noted that removal actions generally are immediate or interim responses, and remedial actions generally are permanent responses.  See, e.g., OHM Remediation Servs. v. Evans Cooperage Co., 116 F.3d 1574, 1578 (5th Cir. 1997). In addition, "Congress intended that the term 'removal

the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction, or secure disposition offsite of hazardous substances, or may otherwise be necessary to protect the public health or welfare; the term includes offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials.

42 U.S.C. § 9601(24).

action' be given a broad interpretation." See, e.g., Kelley v. E.I. DuPont de Nemours and Co., 17 F.3d 836, 843 (6th Cir. 1994).

With these principles in mind, we conclude that the response action in this case is properly classified as removal. The groundwater quality assessment program that Conoco/Vista instituted by order of the Louisiana Department was conducted in three phases. The first phase was one of assessment only, to confirm the presence of contaminants and understand the groundwater flow and other underground conditions. The second phase--and the only one that G&M participated in--was a more detailed assessment to determine the extent of contaminants in the first fifty feet of soil and to investigate water quality below that level. The third phase included establishing a groundwater monitoring and remediation program and conducting a feasibility study of remedial alternatives. In the specifications and contract documents, G&M described the third phase as "a comprehensive rate-and-extent assessment of migrating ground-water contaminants, and if necessary, a determination of the appropriate remedial actions necessary to abate contaminant movement."

The operative facts are that G&M installed monitor wells and piezometers at the Complex. In describing the scope of the work it was to perform under the contract, G&M stated that it had designed the monitor wells and piezometers to collect data but also "so that they can be converted to recovery wells if needed." At the time, G&M apparently did not consider its work to include any remediation

-17-

efforts, and only considered it a possibility that its work would be part of a recovery effort.

Although Conoco/Vista eventually removed and replaced these wells, they were part of a pilot corrective action program that Conoco/Vista instituted in response to the Louisiana Department order. Their ultimate use is irrelevant, however, because the crucial response activity is that which occurred during G&M's involvement. Thus, even if the wells had remained in place and their use converted to an unquestionably remedial purpose, that would not change the classification for statute of limitations purposes. See Louisiana v. Braselman Corp., 78 F. Supp. 2d 543, 549 (E.D. La. 1999) (monitoring wells were used during investigation and design phases of project; their continued use during remedial action phase did not convert the pilot study to remedial action); Advanced Micro Devices, 38 F. Supp. 2d at 813 ("The fact that the extraction activities ultimately did not turn out to be short-term, because they were implemented in the final remedy four years later, cannot now be considered in hindsight.").

The undisputed facts show that no permanent remedy was in place for the Complex when G&M constructed and installed the wells. Even if the wells performed some function that falls within the definition of remedial activity, that does not automatically exclude them from classification as removal activities. There can be some overlap between the two. See General Elec. Co. v. Litton Indus. Automation Sys., Inc., 920 F.2d 1415, 1419 (8th Cir. 1990)

(although CERCLA lists excavation as an example of remedial activity, excavation can be and under facts of case is a removal activity).

Although G&M suggests that a clean-up program of this magnitude and duration must be categorized as remedial, we are not persuaded. The record shows that the Louisiana Department had yet to issue its final decision, and only that decision will define the ultimate remedial strategy for the Complex. Even if the replacements for these wells are integral to the long-term remediation of the site, that does not mean that their initial placement cannot be categorized as removal. See General Elec. Co., 920 F.2d at 1419 n.4; Advanced Micro Devices, 38 F. Supp. 2d at 813; EPA v. TMG Enters., Inc., 979 F. Supp. 1110, 1130 (W.D. Ky. 1997).

We hold that the activities at issue are properly categorized as removal activities, and the statute of limitations does not bar Conoco/Vista's counterclaim for CERCLA contribution.

## III.

Having determined that Conoco/Vista's CERCLA counterclaim was timely, we must next decide whether G&M is a "covered person" under CERCLA and therefore amenable to a contribution claim. See CERCLA

§ 107(a), 42 U.S.C. § 9607(a) (1994).[5]  The statute defines a "covered person" as:

> (1) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance. . . .

The district court held that G&M is not an operator, arranger, or transporter of hazardous substances.[6]  The court described G&M as "merely an environmental contractor employed to investigate and assist in constructing a facility for remedying contamination already in the soils."

---

[5]To prevail in a contribution action, Conoco/Vista must show 1) G&M is a "covered person" under CERCLA section 107(a); 2) the Complex is a "facility" under CERCLA; 3) a "release" or "threatened release" of a "hazardous substance" occurred at the facility; and 4) the release or threatened release caused Conoco/Vista to incur response costs.  See 3550 Stevens Creek Assocs. v. Barclays Bank, 915 F.2d 1355, 1358 (9th Cir. 1990).  The last three elements are not at issue in this appeal.

[6]Conoco/Vista did not allege that G&M is the owner of the Complex.

We agree with the district court concerning G&M's status as a transporter, but we conclude that the disputed material facts preclude the entry of summary judgment declaring that G&M is not an operator or an arranger.

A.

Although the first category of "covered persons" refers to "the owner and operator" of a facility, those words are not redundant. In some circumstances the operator may not be the owner. In addition, a facility may have more than one operator.

While we normally begin our analysis with the statutory language, we do not obtain much assistance from the CERCLA definition of a facility's "operator" as "any person . . . operating" the facility. 42 U.S.C. § 9601(20)(A)(ii) (1994). We look then to see how case law has supplied a definition.

> [U]nder CERCLA, an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility. . . . [A]n operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.

United States v. Bestfoods, 524 U.S. 51, 66-67 (1998). For one to be considered an operator, then, there must be some nexus between that person's or entity's control and the hazardous waste contained in the facility. This nexus has been described as a "well-settled rule" that "'operator' liability. . . only attaches if the defendant had authority to control the cause of the contamination at the time the hazardous substances were released into the

-21-

environment." Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp., 976 F.2d 1338, 1341 (9th Cir. 1992); see also CPC Int'l, Inc. v. Aerojet-General Corp., 731 F. Supp. 783, 788 (W.D. Mich. 1989) ("The most commonly adopted yardstick for determining whether a party is an owner-operator under CERCLA is the degree of control that party is able to exert over the activity causing the pollution.").

A court must decide whether a contractor is an operator after considering the totality of the circumstances concerning its involvement at the site. See K.C. 1986 Ltd. Partnership v. Reade Mfg., 33 F. Supp. 2d 820, 834 (W.D. Mo. 1998). While Conoco/Vista point out that G&M had a great deal of control over the placement, design and installation of the wells, including the selection and supervision of the subcontractor who performed the actual installation, G&M portrays its role as one of lending advice and expertise to the project that was ultimately controlled by Conoco/Vista. However, it is more than the portrayal of the roles that is in dispute. The parties also disagree on material facts concerning Conoco/Vista's technical expertise, their supervision of the work, and the parties' relative authority at the work-site. Because the facts concerning the degree of G&M's control over the monitor wells are in dispute, summary judgment declaring that G&M was not an operator was premature.

B.

Arranger liability attaches under CERCLA when one has "arranged for disposal" of hazardous substances. See 42 U.S.C. § 9607(a)(3). Because CERCLA does not define "arranged for," courts sometimes look to the definition and interpretation of "disposal" for assistance in deciding if one is an arranger. While we have not provided a bright-line test for determining when one is an "arranger," we have looked at "disposal" in the context of the entire phrase. In Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1573 (5th Cir. 1988), we rejected a narrow interpretation of "disposal," thereby leaving open the possibility that one who moves hazardous waste intra-site can be held liable as an arranger.[7]

The parties dispute if and how the hazardous waste was moved by G&M at the Complex, including whether installation of the wells by G&M's subcontractor caused migration of the ethylene dichloride. Thus, the district court should not have entered summary judgment on this issue. See Burlington N. R.R. Co. v. Woods Indus., Inc., 815 F. Supp. 1384, 1392 (E.D. Wash. 1993) (even though lessee didn't bring hazardous waste to the site, if facts revealed that

---

[7]Tanglewood also declined to answer another argument G&M raises, namely that arranger liability under CERCLA may not reach beyond waste generators that enlist third parties as agents. When asked to decide which specific businesses and activities are covered by CERCLA, we declined to do so in the context of a Rule 12(b)(6) motion. 849 F.2d at 1573-74. We have not been asked to articulate a list in this case.

-23-

its instructions to a third party caused waste to be dispersed across the site it would be subject to arranger liability).

"Arranger" is another CERCLA term that is to be given a liberal interpretation. See, e.g., United States v. Aceto Agric. Chems. Corp., 872 F.2d 1373, 1380 (8th Cir. 1989). Our approach in Tanglewood is consistent with that interpretation. We are mindful, however, that just as a nexus must exist for operator liability to attach, there must also be a nexus that allows one to be labeled an arranger. One court has described that nexus as "the obligation to exercise control over hazardous waste disposal, and not the mere ability or opportunity to control the disposal." General Elec. Co. v. Aamco Transmissions, Inc., 962 F.2d 281, 286 (2d Cir. 1992) (emphasis in original). On remand, therefore, the totality of the circumstances must take into consideration each of these factors.

C.

The district court correctly decided that G&M is not subject to liability as a "transporter" of hazardous waste. CERCLA defines "transportation" as "the movement of a hazardous substance by any mode. . . ." 42 U.S.C. § 9601(26) (1994). Under CERCLA section 107(a)(4), however, liability is imposed on a person who transports hazardous substances to a disposal or treatment facility or to "sites selected by such person." Even if G&M's conduct resulted in the unintended migration of ethylene dichloride, there is no evidence that G&M moved the ethylene dichloride to another facility or site. We affirm the entry of summary judgment on this issue.

-24-

IV.

We turn now to Conoco's state common law counterclaims of breach of contract, fraud, breach of warranty, and negligence. The district court entered summary judgment on all, finding them barred by the applicable statutes of limitations. Conoco/Vista correctly point out that G&M bears the burden of proof on such an affirmative defense. See Bell v. Showa Denko K.K., 899 S.W.2d 749, 753 (Tex. App. 1995, writ denied). They assert that their claims were timely by virtue of the relation back doctrine and the Texas discovery rule and that the parties agreed to toll the statutes as part of the Interim Agreement.

A.

The Interim Agreement, signed by the parties in 1990, is not a model of clarity. It recites that its purpose is to achieve accord and satisfaction of past disputes and to suspend potential future disputes about paying expenses associated with the groundwater assessment program. The Agreement called for the parties to reach further accord within 90 days on the criteria for determining whether a well had been properly or improperly installed. The parties agreed to pay all of their own expenses to date, with Conoco/Vista agreeing to waive reimbursement of what it now says was $250,000 in expenses. The final relevant portion of the Agreement is in paragraph H, which adopted the ten-year "statute of limitations" contained in Tex. Civ. Prac. & Rem. Code

Ann. §§ 16.008 (West Supp. 2000) and 16.009 (West 1986)[8] and applied it to any unresolved claim for damages.

The parties make much of their disagreement as to the purpose of the Interim Agreement. Conoco/Vista insist that paragraph H reflects the parties' agreement to toll and extend the statute of limitations, that its inclusion was an integral part of the deal, and that G&M in effect received $250,000 as consideration for the extension.[9] G&M denies that such a purpose existed. This disagreement is irrelevant to the basis for the summary judgment order, however, because the district court found the document unenforceable as an "agreement to enter into an agreement."

Under Texas law, parties may agree on certain contractual terms, understanding them to be an agreement, while leaving other terms open for future negotiation. See Scott v. Ingle Bros. Pac., Inc., 489 S.W.2d 554, 555 (Tex. 1972).[10] Whether we agree with the

_____

[8]The statutes are in fact statutes of repose rather than statutes of limitations. They permit a person to bring suit for damages against architects, engineers and others who design and construct improvements to real property or equipment attached to real property no later than ten years after the improvements are completed.

[9]Elsewhere in their brief, Conoco/Vista argue that the statutes of repose cited in paragraph H do not apply because G&M is not an engineering or construction firm. Conoco/Vista cannot have it both ways, and we disregard that argument.

[10]We recognize that this is an incomplete statement of Texas law. There are two essential elements that must be satisfied for this kind of contract to be enforceable. First, the contract must be sufficiently definite in its terms so that a court can understand the promises made. Second, all material terms of the contract must be agreed upon. See T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992).

district court that the Interim Agreement is an "agreement to agree" ultimately makes no difference. In the state court lawsuit --involving the same parties and exactly the same state common law claims--the trial court entered summary judgment in favor of G&M on the sole ground that the claims were barred by the applicable statutes of limitations. Conoco/Vista appealed, arguing that a question of fact existed as to whether paragraph H of the Interim Agreement tolled and extended the statutes of limitations. The Texas Court of Appeals reversed the summary judgment order, holding that paragraph H is ambiguous as a matter of law and that its interpretation is a fact issue.

This is a matter of state substantive law where we will defer to the Texas Court of Appeals' decision. See United States v. Johnson, 160 F.3d 1061, 1063 (5th Cir. 1998). We are required to apply the doctrine of stare decisis to the Texas appellate court decision on this issue, particularly because it was issued in a case involving the same parties and the same issues. See Peregoy v. Amoco Prod. Co., 742 F. Supp. 372, 374 (E.D. Tex. 1990), aff'd, 929 F.2d 196 (5th Cir. 1991).

Accepting the decision that the Interim Agreement dated August 27, 1990 is ambiguous, it is uncertain whether it tolls the statute of limitations. We must reverse the summary judgment order on this issue, then, unless we can determine as a matter of law that the limitations period expired before that date.[11]

_____

[11]The district court made no finding as to when the Interim Agreement was terminated. Under paragraph H, termination triggers

B.

We return, then, to the fundamental question of when the statute of limitations expired for each of the state law claims. Conoco/Vista never answer that question directly. Rather, they assert various reasons why their amended counterclaim was filed within the requisite time without saying when that time expired. Texas law provides the answer: the statute of limitations for breach of contract, breach of warranty, and fraud is four years,[12] and for negligence it is two years.[13]

Conoco/Vista argue that the discovery rule applies to each of these actions, so that the limitations period began running when they learned of the injury rather than when the injury occurred. Under Texas law, the discovery rule (an exception to the general rule)applies to breach of contract[14] and fraud,[15] but it does not

---

the running of the statute of limitations.

[12]See Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (West Supp. 2000)(fraud); Enterprise-Laredo Assocs. v. Hachar's, Inc., 839 S.W.2d 822, 837 (Tex. App. 1992, writ denied) (breach of contract); S-C Indus. v. American Hydroponics Sys., Inc., 468 F.2d 852, 855-56 (5th Cir. 1972) (non-UCC breach of warranty subject to four-year limitations in Tex. Rev. Civ. Stat. Ann. art. 5527, repealed and now contained in § 16.004).

[13]See Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (West Supp. 2000).

[14]See Enterprise-Laredo Assocs, 839 S.W.2d at 837.

[15]See Quinn v. Press, 140 S.W.2d 438, 440 (Tex. 1940).

-28-

apply to breach of warranty[16] or negligent design and construction[17] causes of action.

We can apply the four- and two-year statutes of limitations to the breach of warranty and negligence claims, as it is undisputed that G&M completed its work in 1985. The statutes expired in 1989 and 1987, respectively, and none of Conoco/Vista's arguments serve to change that conclusion.[18]

With respect to the breach of contract and fraud claims, G&M bears the burden of proof as to the discovery rule. In order for G&M to prevail on its affirmative defenses to the breach of contract and fraud claims in a summary judgment motion, it must

---

[16]See Martinez v. Humble Sand & Gravel, Inc., 940 S.W.2d 139, 147 (Tex. App. 1996), aff'd sub nom. Childs v. Haussecker, 974 S.W.2d 31 (Tex. 1998) (discovery rule does not apply to breach of warranty claims under Tex. Bus. & Comm. Code Ann. § 2.725 relating to sale of goods). Conoco/Vista allege that G&M breached an express warranty, but they cite only cases regarding breach of an implied warranty in support of their argument that the discovery rule applies. Even if those cases were relevant, they are no longer good law. See Clark v. DeLaval Separator Corp., 639 F.2d 1320, 1325 n.2 (5th Cir. 1981).

[17]See Olson v. Passero, 402 S.W.2d 953, 954 (Tex. App. 1966, writ ref'd n.r.e.).

[18]We find no merit to Conoco/Vista's argument that the Texas relation back doctrine provides relief. Conoco/Vista amended their counterclaim in December 1997. That amendment could not relate back to anything earlier than G&M's April 1997 complaint. The pendency of the state court lawsuit before April 1997 did not toll the statute of limitations for the federal court action. See Cunningham v. Fox, 879 S.W.2d 210, 212 (Tex. App. 1994, writ denied) ("A dismissal is the equivalent of a suit never having been filed. . . . Therefore, if a suit is dismissed, the statute of limitations is not tolled for any new pleading filed."); Armstrong v. Ablon, 686 S.W.2d 194, 196 (Tex. App. 1984, no writ) ("Where a plaintiff voluntarily abandons his suit, the statute of limitations is not interrupted during the period when the suit was pending.").

prove when the claims accrued and must negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when Conoco/Vista discovered or should have discovered the nature of the injury. See Burns v. Thomas, 786 S.W.2d 266, 267 (Tex. 1990). We conclude that G&M has not met this burden, as the facts are disputed concerning the date on which Conoco/Vista did or should have discovered their injury.

Certainly Conoco/Vista cannot argue for a discovery date of later than April 1993, because that is when they filed their state court lawsuit. In their motion to reconsider the district court's order, Conoco/Vista asserted that the window for them to have discovered their injury is from May 1988 to sometime in 1992, when they initiated the plugging and abandonment of the remaining wells. G&M argues that Conoco/Vista discovered the injury in a series of alternative ways from 1988 through 1993.

If we were reviewing this without the possible influence of the Interim Agreement on the tolling issue, we would accept Conoco/Vista's admission that they discovered their injury no later than 1992. We would then apply the four-year statute of limitations for breach of contract and fraud and conclude that their 1997 counterclaim was not timely. However, as we noted earlier, we must reverse the summary judgment order unless we can conclude as a matter of law that the statute of limitations expired before the Interim Agreement was signed on August 27, 1990. Because we may not resolve the disputed facts concerning when the

injury was or should have been discovered, we leave this determination for the district court.

## V.

We reverse the district court's judgment and order with respect to its conclusions that Conoco/Vista's CERCLA counterclaim is barred by the statute of limitations, that G&M cannot be found liable in a CERCLA contribution claim as an operator or an arranger, and that Conoco/Vista's state law claims for breach of contract and fraud are time-barred. We affirm the district court's judgment and order insofar as it dismisses the CERCLA claim seeking to hold G&M liable as a transporter and Conoco/Vista's counterclaim for breach of warranty and negligence. We remand for further proceedings consistent with this opinion.