The CITY OF WACO, Plaintiff,

v.

Dennis SCHOUTEN, et al. Defendants.

No. CIV.A. W–04–CA–118.

United States District Court,
W.D. Texas,
Waco Division.

March 29, 2005.

Enid Allyn Patterson Wade, Naman, Howell, Smith and Lee, P.C., Arthur L. Pertile, III, City of Waco, Roy Lee Barrett, Naman, Howell, Smith et. al., Waco, TX, for Plaintiff.

Russell W. King, King Law Offices, P.C., Stephenville, TX, Alan Moore, Don Martinson, Fanning, Harper & Martinson, Peter K. Wahl, Akin Gump Strauss Hauer & Feld LLP, Dallas, TX, Tynan Buthod, George Thomas Shipley, Baker Botts, L.L.P., Houston, TX, Raymond E. White, Akin Gump Strauss Hauer & Feld LLP, Austin, TX, James D. Bradbury, Jackson Walker, LLP, Fort Worth, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

WALTER S. SMITH, JR., Chief Judge.

Broumley Dairy, Jim Broumley and Keith Broumley ("Defendants") have submitted a Motion to Dismiss, or, in the Alternative, to Transfer Venue pursuant to Federal Rule of Civil Procedure 12(b). Defendants make four arguments as to why Plaintiff's claims should be dismissed. First, Defendants argue that, although all claims which Plaintiff has asserted against them are properly venued in the Western District of Texas, the Court should nonetheless transfer the claims to the Northern District of Texas. Second, Defendants argue that the individual defendants who are alleged to have operated the dairies cannot be held liable under principles of corporate law and therefore must be dismissed. Third, Defendants argue that Plaintiff's claims under two environmental statutes have several defects which warrant dismissal. Finally, Defendants assert that Plaintiff's tort claims fail for several reasons. Having reviewed the Motion and the applicable legal authority, the Court finds that it should be denied.

## I. INTRODUCTION

The City of Waco ("Waco") filed suit in this Court against eight dairies on April 24, 2004. All eight of the original defendants operate dairies which are located in either Comanche County or Erath County. On May 27, 2004, Waco amended its complaint to add six additional diaries and their respective owners and operators. Three of the newly-added defendants operate dairies which are located in either Bosque County or Hamilton County.

On June 21, 2004, Waco filed a motion to voluntarily dismiss its Texas Water Code claim against all defendants. The Court granted Plaintiff's motion, and the Texas Water Code claims were dismissed on June 28, 2004. On September 30, 2005, the Court signed an order dismissing without prejudice all claims against Broumley Dairy, Jim Broumley, Keith Broumley. The same day, the Court signed an order dismissing with prejudice all claims against Ber Lengers and Harry DeWitt. Plaintiff filed its Second Amended Complaint on October 12, 2004. In this most recent complaint, Plaintiff alleges the following causes of action against all defendants: (1) cost of recovery or contribution under the federal Comprehensive Environmental Response, Compensation, and Recovery Act ("CERCLA"), (2) a "citizen suit" under the federal Clean Water Act ("CWA"), (3) cost of recovery or contribution under the Texas Solid Waste Disposal Act ("TSWDA"), (4) negligence, (5) negligence per se, and (6) trespass.

On November 15, 2004, the Court signed an order dismissing with prejudice all claims against Joost Smulders and Double S. Dairy, L.L.C. On January 7, 2005, the Court signed an order dismissing with prejudice all claims against Excel Dairy, Allen Vander Horst, the Mear Family Trust, Thomas Mear and Elanor Mear. On February 4, 2005, the Court signed two

orders dismissing with prejudice all claims against Russell Carpenter, Russell Carpenter Dairy, J & L Dairy, Jimmy Pack, Larry Pack, Alma Pack, Meine Huisman and Huisman Dairy.

## II. MOTION TO DISMISS

A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir.1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir.1986). The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This strict standard of review under rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 Charles A. WRIGHT & ARTHUR R. MILLER § 1357 (1996).

## III. ANALYSIS

### A. Dismissal or Transfer of CWA Claims

Pursuant to Fed.R.Civ.P. 12(b)(3), Defendants move to dismiss Plaintiff's complaint based on improper venue. Venue concerns the appropriate district court in which an action may be filed. *See N.L.R.B. v. Line,* 50 F.3d 311, 314 (5th Cir.1995). Generally, in order for venue to be proper, it must be proper as to all defendants and all claims. 28 U.S.C.A. § 1391(a)(2).

There are two types of federal venue statutes: special venue statutes and 28 U.S.C. § 1391. The general venue statute, which governs venue of all claims brought in federal court except where venue is "otherwise provided by law." *See* §§ 1391(a) & (b). Special venue provisions are typically intended to control venue of all claims brought under the statutes to which they relate. The Clean Water Act contains a special venue provision. Section 1365(c) of the Clean Water Act states, "any action representing a violation by a discharge source of an effluent standard or limitation or an order respecting such standard or limitation may be brought under this section only in the judicial district in which such source is located." (West Code Ann., 2004).

██ On the face of the Complaint, it is clear that Defendants operate a dairy within the boundaries of the Western District of Texas. Thus, venue is proper over the Plaintiff's CWA claim against Defendants. Defendants argue that since venue is not proper over the CWA claims against the Erath County Defendants, the Court should transfer the entire case to the Northern District of Texas in order "to keep this case consolidated, which is in the interest of justice." The Court has already solved this problem, albiet not in the way Defendants have suggested, by asserting pendent venue over the CWA claims against the Erath County defendants and therefore retaining all of Plaintiff's claims in a single action.[1] Since the noble purpose of Defendants' motion to transfer has been achieved, the portion of the motion which asks that the case be transferred to

---

1. For a detailed discussion of the Court's decision to invoke pendent venue over the CWA claims against the Erath County defendants, see e.g. Memorandum Opinion and Order Re: Judy Lueck's Rule 12(b) Motion to Dismiss or, in the Alternative, Motion to Transfer Venue.

the Northern District of Texas will be denied.

## B. Veil Piercing

 Defendants' next argument is that Plaintiff's CERCLA claims must be dismissed against the individual defendants for two reasons. First, Defendants argue that Plaintiffs have failed to include sufficient allegations in the complaint which would allow the individual defendants to be held liable under CERCLA. The Court finds that Plaintiff has pled facts which would be sufficient to establish their claims against the individual defendants under both CERCLA. In order to hold a defendant liable under CERCLA, a plaintiff must establish that the defendant is a "covered person" under CERCLA and therefore amenable to a contribution claim. See CERCLA § 107(a), 42 U.S.C. § 9607(a). The statute defines a "covered person" as, among others:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of...

*Geraghty and Miller, Inc. v. Conoco Inc.* 234 F.3d 917, 927–28 (5th Cir.2000)(citing 42 U.S.C. § 9607(a)). Plaintiff has alleged that the individual defendants are owners and operators of the facilities which are alleged to have released the hazardous substances which form the basis of the CERCLA claim. Of course, case law has interpreted the "owner/operator" provisions of CERCLA to impose a burden of proof on the plaintiff before an individual may be held liable. In *Geraghty and Miller, Inc. v. Conoco Inc.*, the Fifth Circuit described the standard which courts have used to determine whether individuals may be liable under the "owner/operator" provisions of CERCLA:

an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility.... [A]n operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations. For one to be considered an operator, then, there must be some nexus between that person's or entity's control and the hazardous waste contained in the facility. This nexus has been described as a "well-settled rule" that " 'operator' liability ... only attaches if the defendant had authority to control the cause of the contamination at the time the hazardous substances were released into the environment." *Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.*, 976 F.2d 1338, 1341 (9th Cir.1992); *see also CPC Int'l, Inc. v. Aerojet–General Corp.*, 731 F.Supp. 783, 788 (W.D.Mich.1989) ("The most commonly adopted yardstick for determining whether a party is an owner-operator under CERCLA is the degree of control that party is able to exert over the activity causing the pollution.").

A court must decide whether a contractor is an operator after considering the totality of the circumstances concerning its involvement at the site.

*Geraghty and Miller, Inc. v. Conoco Inc.* 234 F.3d 917, 928 (5th Cir.2000)(some internal citations omitted). However, CERCLA does not contain any heightened pleading requirements, and therefore the "owner/operator" standard as set forth in *Geraghty* will be applied at the summary judgment stage, after an appropriate amount of time has passed to allow for an adequate amount of discovery. If, at the summary judgment stage, Defendant raises the issue and Plaintiff is unable to show that an individual defendant qualifies as a

"covered person" under CERCLA, the Court will enter an appropriate order. Plaintiff's CERCLA claims against the individual defendants have been sufficiently pled, and Defendant's first argument is denied.

■ Second, Defendants claim that Plaintiffs have failed to make any allegations which would allow for piercing of the corporate veil, which Defendants argue is necessary in order to hold the individuals liable under CERCLA. This assertion is without merit, as veil-piercing is not required in order for individuals to be directly liable under the "owner/operator provisions of CERCLA." *U.S. v. Bestfoods,* 524 U.S. 51, 66, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998)(*citing Riverside Market Dev. Corp. v. International Bldg. Prods., Inc.,* 931 F.2d 327, 330 (5th Cir.1991)("CERCLA prevents individuals from hiding behind the corporate shield when, as 'operators,' they themselves actually participate in the wrongful conduct prohibited by the Act"); *United States v. Kayser–Roth Corp.,* 910 F.2d 24, 26 (1st Cir.1990)("[A] person who is an operator of a facility is not protected from liability by the legal structure of ownership")).

## C. Plaintiff's CERCLA and TSWDA Claims

Defendants argue that Plaintiff's CERCLA and TSWDA claims must be dismissed for several reasons. Each of Defendants' arguments will be addressed in turn.

## 1. Phosphorus as a Hazardous Substance

■ First, Defendants assert that Plaintiff's CERCLA claim is defective because cow manure and other phosphorus-containing materials are not listed as hazardous substances under CERCLA. Phosphorus is listed as a hazardous substance under CERCLA. In enacting CERCLA, Congress expansively defined the term "hazardous substance" to include:

(A) any substance designated pursuant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act ..., (D) any toxic pollutant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act ..., and (F) any imminently hazardous chemical substance or mixture with respect to which the [EPA] Administrator has taken action pursuant to section 2606 of Title 15.

42 U.S.C. § 9601(14). Pursuant to subsection (B), the EPA has listed more than 700 hazardous substances in Table 302.4 of 40 C.F.R. § 302.4 (1995). As the Second Circuit has stated, "[w]hen a mixture or waste solution contains hazardous substances, that mixture is itself hazardous for purposes of determining CERCLA liability. Liability under CERCLA depends only on the presence in any form of listed hazardous substances." *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1201 (2d Cir.1992). Phosphorus is listed as a hazardous substance under CERCLA. See 40 C.F.R. 302.4. Defendants attempt to distinguish phosphorus as listed under CERCLA from the type of phosphorus which is contained in cow manure and other materials which are generated from dairy operations. Defendants argue that when the EPA listed phosphorus as a hazardous substance under CERCLA, the agency only included "elemental phosphorus", which is derived from phosphate rock. In support of its argument, Defendants cite two administrative documents, 50 Fed.Reg. 5190 (Feb. 6, 1985), and 66 Fed.Reg. 52670 (Oct. 17, 2001). While both of these documents mention the phrase "elemental phosphorus", neither stand for or even support the

proposition that the EPA intended that only "elemental phosphorus" be classified as a hazardous substance under CERCLA. The Defendants' arguments regarding phosphorus are not supported by CERCLA, relevant case law or administrative regulations. As such, the Court finds that the type of phosphorus which Defendants are accused of releasing is a hazardous substance as defined under CERCLA, and Defendants' argument is denied.

### 2. The Fertilizer Application Exemption

■ Defendants next argue that Plaintiff's CERCLA and TSWDA claims must be dismissed because fertilizer application is not a release under the statute. Under CERCLA, one of the elements that a plaintiff must allege and prove is that the defendant facility released or threatened to release a hazardous substance. *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 347–48 (6th Cir.1998). CERCLA defines release as: "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment...." 42 U.S.C. § 9601(22). Defendants correctly point out that the definition of release excludes "the normal application of fertilizer products." 42 U.S.C. § 9601(22). The TSWDA contains a similar exemption.

■ According to Defendants, since Plaintiff failed to allege that phosphorus has been released from anything other than the normal application of fertilizer, the CERCLA claim must therefore be dismissed. However, Plaintiff alleged that Defendants have done more than simply engage in the normal application of fertilizer. Plaintiff alleged that Defendants have improperly stored large amounts of waste on their property, and that they have failed to properly maintain these waste storage areas. Plaintiff alleged that these acts and omissions, among others, have caused and continue to cause large amounts of phosphorus and other pollutants to be released into the North Bosque Watershed and Lake Waco. The Court finds that Plaintiff has sufficiently alleged that a release as defined under CERCLA and TSWDA has occurred, and that Defendants' actions constitute more than the exempted "normal application of fertilizer." As such, Defendants argument is without merit.

### 3. Sufficiency of Plaintiff's "Arranger" Allegations

■ Defendants next argue that Plaintiff's CERCLA and TSWDA claims must be dismissed because Plaintiff cannot prove that Defendants have "arranged" for the disposal of waste in Lake Waco. Unfortunately for Defendants, Plaintiff does not have to prove that Defendants were "arrangers" at this stage of the litigation. The Court finds that Plaintiff sufficiently alleged that Defendants have arranged for disposal of hazardous substances at Lake Waco, as required under CERCLA and TSWDA. Thus, the Defendants' argument is denied.

### 4. Plaintiff's Response Costs and Remedial Action

■ Defendants argue that Plaintiff's CERCLA and TSWDA claims are defective because the steps which Plaintiff alleges it has taken to remedy the alleged releases of hazardous substances do not qualify as "response costs" or "remedial action" under either statute. As the Fifth Circuit has stated:

CERCLA § 101 defines the terms "response," "removal," and "remedial action." Responses consist of removals and remedial actions and "enforcement activities related thereto." A "removal" is generally understood to be a short-term response and a "remedial action" is

generally considered a long-term response or permanent solution.

Removal is defined broadly, as follows: [T]he cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of a threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

"Remedial action" is also defined broadly and includes:

those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release of threatened release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement...onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment.

*U.S. v. Lowe,* 118 F.3d 399, 402 (5th Cir.1997)(citing CERCLA § 101(24), 42 U.S.C. § 9601(24)(internal citations omitted)). In Plaintiff's Second Amended Complaint, Plaintiff alleged that because of the algae bloom which is due to the alleged voluminous releases of phosphorus into the North Bosque Watershed, it has had to add chemicals into its water treatment systems to combat taste and odor problems. This allegation is sufficient to state a claim

under CERCLA and TSWDA, and Defendants' argument is denied.

## D. Failure to State a Claim under the Texas Solid Waste Disposal Act

██ Defendants argue that Plaintiff failed to state a claim under the Texas Solid Waste Disposal Act. Specifically, Defendants argue that Plaintiff failed to allege (1) that the Texas Council for Environmental Quality ("TCEQ") approved of the Plaintiff's "remedial action", or (2) that Plaintiff took measures to notify Defendants prior to seeking cost recovery or contribution. After Defendants submitted this motion, Plaintiff's amended their complaint and corrected these deficiencies. In the Second Amended Complaint, Plaintiff states "The City of Waco has conducted a removal or remedial action within the meaning of 361.344 of TSWDA. Such removal or remedial action is necessary to address the release or threatened release of solid waste and has been approved by the TCEQ." This allegation is sufficient to show at this stage that TCEQ approved of the Plaintiff's "remedial action" as required under the TSWDA.

██ Plaintiff's Second Amended Complaint also states "[t]he City of Waco has made reasonable attempts to notify all Defendants of the existence of the release or threatened release of solid waste and that the City of Waco intended to take steps to eliminate the release or threatened release." Plaintiff goes on to allege that Defendants had actual notice of the release or threatened releases, as well as Plaintiff's intention to remedy the damage caused by such releases or threatened releases. These allegations are sufficient to defeat Defendants' second argument for dismissal of the TSWDA claims. As such, Defendants arguments as to why Plaintiff's TSWDA claim should be dismissed are without merit and must be denied.

### E. Plaintiff's Tort Claims

 Defendants argue that Plaintiff's claims for negligence, negligence *per se* and trespass should be dismissed because the State of Texas, rather than Plaintiff, owns Lake Waco. Thus, Defendants argue that only the State of Texas can assert tort claims for damages caused to Lake Waco. In support of their argument, Defendants cite Section 11021 of the Texas Water Code, which provides:

> (a) The water of the ordinary flow, underflow, and tides of every flowing river, natural stream, and lake, and of every ban or arm of the Gulf of Mexico, and the storm water, floodwater, and rainwater of every river, natural stream, canyon, ravine, depression, and watershed in the state is the property of the state.

TEX. WATER CODE, § 11.021. Plaintiff correctly points out that ownership is not an element of negligence or negligence *per se* in Texas. In order to sustain an action for negligence in Texas, a plaintiff must establish three elements. There must be a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987).

 Plaintiff has alleged that the defendant dairies owed a duty not to pollute Lake Waco or the water contained therein, that the defendants acts and omissions breached such a duty, and that Plaintiff suffered harm as a result of the defendants' breaches, as the quality of Plaintiff's drinking water diminished and the costs of treating the water supply increased considerably. Furthermore, Plaintiff alleges that it has property rights to the water that is contained in Lake Waco. These allegations are sufficient to sustain a claim for negligence. Similarly, Plaintiff's allegations are sufficient to support its negligence *per se* claim. Finally, Plaintiff's trespass claim is sustained because Plaintiff has alleged that the defendants' polluted discharges have entered Plaintiff's water treatment facilities and that such intrusions were not authorized. This is sufficient to sustain a trespass claim, and Defendants' argument lacks merit. Accordingly, it is

**ORDERED** that Defendants' Rule 12(b) Motion to Dismiss, or, in the Alternative, to Transfer Venue is **DENIED**.